[Civ. No. 5706.   Fourth Dist.   Jan. 6, 1958.]

COUNTY OF SAN BERNARDINO, Respondent, v.
ROSCOE SAPP, as Executor, etc., Appellant.

Taylor F. Peterson for Appellant.

Albert E. Weller, County Counsel (San Bernardino), and John B. Lawrence, Deputy County Counsel, for Respondent.

WAITE, J. pro tem.*—Plaintiff filed this action on a common count, alleging that defendant Walter Penn Sapp was indebted to plaintiff for money had and received by Sapp in the sum of $3,336, with interest thereon from February 1, 1954. The answer is a general denial and in addition raises the defense of the statute of limitations. Walter Penn Sapp died while the trial was pending and the executor of his estate was substituted as defendant, whereupon a pleading entitled "Amended and Supplemental Complaint (Second amendment)" was filed, alleging the indebtedness, the presentation of a creditor's claim in the probate matter and the rejection thereof by operation of section 712 of the Probate Code.

The facts are set forth in the following written stipulation which was the only evidence considered at the trial:

"It is stipulated by and between the parties that:

"Old Age Security aid was duly paid to Walter P. Sapp as shown in the Bill of Particulars after an application which was proper in form and which was approved in 1939 as pro-

---

*Assigned by Chairman of Judicial Council.

vided by law. From and after April 7, 1950, Sapp owned personal property in excess of the amount permitted for recipients of Old Age Security aid, having on that date sold land assessed at $2.00 an acre for approximately $200.00 an acre. This land had been jointly owned by Sapp and his wife until she died in 1950 and prior to this sale. The deed was recorded in this county and indexed under Sapp's name in the grantor's index only. It bears $16.50 worth of I.R.S. stamps. At all times thereafter he had property exceeding the legal maximum by more than $3,400.00 but the County did not know this. Annually from 1939 to the commencement of this action, Sapp filed with the County a legally-required statement under penalty of perjury that he did not have excess property. Without such statements his aid would have been discontinued.

"During said period he also owned income-producing real property in Los Angeles and other real property in Georgia which was not reported to or known to or suspected by the County or any of its employees.

"The San Bernardino County tax rolls reveal the following total annual assessments for Sapp: 1949, 1950—$550; 1951— $530; 1952—$370; 1953, 1954—$420. In each of these years he was assessed with four or more parcels, described by fractional subdivisions of sections. Records of the Welfare Department show that the decline in his assessment in 1952 was caused by the burning of a house which had been assessed at $220. The tax rolls also show in 1951 a decline in Sapp's acreage of approximately 74 acres and in 1953 an increase of 8.35 acres, assessed at $60. The official assessment ratio was at all relevant times 20 per cent.

"The Welfare Department, from 1939 to the institution of this action, annually reviewed Sapp's eligibility for aid. The department did not in fact learn of the deed from Sapp or of the change in his acreage or of any other fact to make a reasonably prudent man suspect that Sapp was receiving aid by fraud (which is not expressly designated herein as known to the County), until January 8, 1954, at the earliest, when a niece of Sapp volunteered the information that he owned other property. This led to an exhaustive investigation which revealed the deed of April 7, 1950, and Sapp's ownership of property elsewhere.

"The normal periodical reinvestigation of the eligibility of a recipient of Old Age Security aid does not include a search of the grantor's index or of the property descriptions and

acreages shown on the tax rolls, but only (as far as property is concerned) a check that the recipient's assessed valuation is not over the permitted maximum. (State Department of Social Welfare Old Age Security Manual Section A-372). A more extensive check than that specifically required by the Manual is not made in the absence of circumstances arousing suspicion. This check is made by one clerk who makes from 75 to 100 such checks per week. The incorporation into this routine reinvestigation of a search of the grantor's index or of the property descriptions and acreages in the tax rolls to detect changes in property description would greatly increase the burden of this work.

"During the period from April, 1951, to January, 1954, The County Welfare Department repeatedly urged Sapp to sell his unused land so that the proceeds would be applied to his support, but he continually deferred action by promising to utilize this land. On March 15, 1951, a Welfare Department case worker asked a real estate broker in the area where Sapp's land was located about the value of this land. He was told that there were no sales of such land, but that the top price would be $5.00 per acre.

"In January, 1954, Sapp's aid was discontinued so that he received no aid in February or thereafter. A prompt demand was made upon Sapp for repayment of the sum accumulated in the Bill of Particulars, but this demand was refused. This suit was filed July 14, 1955."

On these stipulated facts the trial court ordered judgment for plaintiff in the sum of $3,336, plus interest and costs, and defendant appeals from that judgment.

Appellant's first contention is that the action is barred by section 339, subdivision 1 of the Code of Civil Procedure as to all payments made more than two years prior to July 14, 1955, the date the action was filed. He argues (1) That because of certain provisions of the Welfare and Institutions Code respondent county should have discovered the recipient's fraud much earlier than it did; and (2) That since respondent did not plead fraud in the complaint such may not be urged in avoidance of the bar of the statute of limitations. Briefly summarized, the pertinent sections of the Welfare and Institutions Code provide that when an application for aid is filed under section 2180 the county must investigate promptly to determine the eligibility of the applicant to receive aid (§ 2180.5). After such mandatory initial investigation is made the county may thereafter, annually or oftener, make

such investigation as the board of supervisors deems necessary to determine the recipient's eligibility to continue to receive aid (§ 2184). In the instant case the county relied on the recipient's annual statement made under penalty of perjury that he did not have excess property, and further relied on the routine investigation made by the Welfare Department which did not reveal the fraud practiced by the recipient. On the record before us it appears that the trial court was justified in holding that the annual investigation by the county was reasonable and sufficient, particularly in view of the annual statements furnished by the recipient. Moreover, appellant is hardly in a position to complain that the recipient's fraud was not discovered sooner because, as said by the Supreme Court:

"The courts will not lightly seize upon some small circumstance to deny relief to a party plainly shown to have been actually defrauded against those who defrauded him on the ground, forsooth, that he did not discover the fact that he had been cheated as soon as he might have done. It is only where the party defrauded should plainly have discovered the fraud except for his own inexcusable inattention that he will be charged with a discovery in advance of actual knowledge on his part." (*Victor Oil Co.* v. *Drum*, 184 Cal. 226, 241 [193 P. 243].)

It was not necessary in this case to plead fraud in order to rely on it in avoidance of the bar of the statute of limitations. The complaint is not based on fraud nor does it show on its face that the action is barred unless facts are pleaded which toll the running of the statute. Here respondent sued on a common count for money had and received, appellant raised the defense of the statute of limitations and respondent countered with stipulated facts which show that the statute had not run because of fraud. (See *Sears, Roebuck & Co.* v. *Blade*, 139 Cal.App.2d 580, 591 [294 P.2d 140], and cases cited therein.) The trial court was correct in ruling that no part of the claim was barred by the statute of limitations. (Code Civ. Proc., § 339, subd. 1.)

Appellant next contends that section 103.3 of the Welfare and Institutions Code sets forth the exclusive method for prosecuting actions for restitution in cases such as this, citing *County of San Bernardino* v. *Simmons*, 46 Cal.2d 394 [296 P.2d 329], and argues from that point (1) That the obligation is one created by statute and therefore recovery is barred by section 338, subdivision 1 of the Code of Civil Procedure

as to all payments made more than three years prior to July 14, 1955; and (2) That since plaintiff sued on a common count, whereas the stipulated facts show a cause of action based upon a statute, there is a fatal variance between the pleading and proof.

Section 103.3, subdivision (b) of the Welfare and Institutions Code provides that any applicant for or recipient of public assistance shall be responsible for reporting accurately and completely within his competence those facts required of him pursuant to subdivision (a) and to report promptly any changes in those facts. Subdivision (d) of section 103.3 states that if any overpayment which results because of the failure to report facts in accordance with subdivision (b) is not adjusted within a period of two months following the month of overpayment, the person receiving the aid shall make restitution and all actions necessary to secure restitution may be brought against him. Subdivision (e) of the same section provides that if it is found that a recipient was possessed of property in excess of the amount permitted by law and that he received such aid in good faith honestly believing eligibility was properly established, the amount collectible shall be limited to an amount equal to the market value of the excess property or the amount of aid granted during the period the excess property was held, whichever is the lesser.

The Simmons case, *supra*, has no bearing here because the principal holding in that case is that section 2224 of the Welfare and Institutions Code provides the exclusive method for recovery from responsible relatives of the recipient and that the county has no derivative action by way of subrogation under section 206 of the Civil Code in such matters. Here the statute prescribes no special statutory procedure or form of action. It merely authorizes the county to bring "all actions necessary to secure restitution" against the overpaid recipient. (Welf. & Inst. Code, § 103.3, subd. (d).) As pointed out by respondent, this obviously includes the normal action for restitution, the common count. Even if the obligation were a statutory one, it would not be barred by section 338, subdivision 1 of the Code of Civil Procedure for the same reason that it is not barred by the two-year statute. (Code Civ. Proc., § 339, subd. 1.) Fraudulent concealment of a cause of action by affirmative misrepresentation prevents the running of the statute in all cases. (*Lightner Mining Co.* v. *Lane*, 161 Cal. 689 [120 P. 771, Ann.Cas.

1913C 1093]; *Pashley* v. *Pacific Electric Ry. Co.*, 25 Cal.2d 226 [153 P.2d 325]; *Stafford* v. *Shultz*, 42 Cal.2d 767, 779 [270 P.2d 1].)

█ There is no variance between the pleading and proof in this case. The mere fact that the recipient's duty to make restitution arose from his violation of a statute is immaterial in a suit on a common count. █ In an action for money had and received it is generally necessary for the plaintiff to prove only his right to the money and the defendant's possession; and any facts, circumstances or dealings from which it appears that the defendant has in his hands money of the plaintiff which he ought in justice and conscience to pay over to him, are competent evidence to support the action. (See 4 Am.Jur. p. 532, § 49.) █ Furthermore, any objection on the ground of variance has been waived by failure to raise it at the trial. (*Sanders* v. *Riviera Realty Co.*, 104 Cal.App. 2d 70, 76 [230 P.2d 856]; *Colbert* v. *Colbert*, 28 Cal.2d 276, 281 [169 P.2d 633].) We conclude that there was no variance and no failure of proof.

The judgment is affirmed.

Barnard, P. J., and Mussell, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied March 6, 1958.