[Civ. No. 19171. First Dist., Div. One. Feb. 20, 1961.]

COUNTY OF SANTA CRUZ, Appellant, v. MARY A. McLEOD, Respondent.

William H. Card, County Counsel, John A. Waner and John Sandbrook, Assistant County Counsel, for Appellant.

Shirley, Saroyan, Cartwright & Peterson, John H. Peterson and Eugenia MacGowan for Respondent.

COAKLEY, J. pro tem.*—This case involves the right of the plaintiff-appellant, county of Santa Cruz, to recover Old Age Security (OAS) payments made to Mary McLeod, defendant-respondent, during the time that she was ineligible to receive such payments. The complaint sought recovery of $4,262.89. Judgment was rendered for plaintiff for $302.60 and costs. The plaintiff appeals. There is no dispute on the facts. The legal questions are (1) which statute of limitation is applicable and (2) when did the applicable statute commence to run?

*Assigned by Chairman of Judicial Council.

## The Facts

In 1947 respondent signed the requisite papers and became a joint tenant with her husband in a savings account in a Utah bank. On the date respondent applied for OAS benefits this account had a balance of $4,997.84, savings from the earnings of respondent's husband, who for many years was employed as a bus driver in Utah. In 1950 respondent applied to Santa Cruz County for benefits under the Old Age Security Law. (Welf. & Inst. Code, § 2000 et seq.) She received aid under the law from December 1950 through August 1956. Respondent's husband died September 18, 1955. On September 21, 1955, all of the money in the joint account was transferred to a San Francisco bank. The account then amounted to $5,544.02. The San Francisco account was opened and maintained in the names of respondent and Smith Freber, her son-in-law, as joint tenants.

Shortly before his death, respondent's husband changed the beneficiary of a $5,000 life insurance policy from respondent to Freber. Freber turned over to respondent a $1,200 cash benefit received under the policy, plus a portion of the $109.09 received each month thereafter under the policy. She also received or retained $500 from the joint savings account at the time said account was transferred to the San Francisco bank. The cash thus received by respondent was used to pay expenses of last illness and burial of her husband, and for a trip to Scotland to revisit her birth place and her dying sister.

Freber learned that respondent was receiving OAS monthly payments shortly after the death of respondent's husband. Neither he nor respondent reported the fact of respondent's excess assets (personal property in excess of $1,200) to Santa Cruz County. Respondent continued to receive and cash the county's monthly checks for approximately a year after the death of respondent's husband. It was stipulated that the county first learned of respondent's bank account immediately before filing the complaint herein, to wit February 1958. Why respondent received no payments from August 1956 until the county's discovery of excess assets around February 1958, is not disclosed in the record. From 1951 to 1956 respondent filed with the county, annually, a written statement under oath, affirming her continued eligibility to receive payments. On the reverse side of each of the sworn affirmations appears information concerning respondent's property, income and re-

sponsible relatives, which information presumably was furnished appellant by respondent. This information discloses three other bank accounts with very small balances, two of which were closed in 1954. In her affirmation filed in February, 1956, five months after her husband's death and the transfer of the Utah joint account to San Francisco, respondent stated that she had neither acquired nor disposed of any personal property since her last affirmation. On the information form on the reverse of the affirmation is a note that there were no bank accounts at that time. There nowhere appears on this or on any other affirmation any reference to the funds in question.

Respondent testified that she had no knowledge of the Utah account, did not know she had $1,200 and did not know they had any money at the time she applied for OAS benefits. Later, under the court's questioning, she testified that she knew her name was on the Utah joint account, that she had signed cards opening the account, that she had gone to the bank with her husband many times but had not gone inside, and didn't know the amount of the funds in the account. She testified that her husband kept from her all information concerning their finances, though he told her there would be money on his death. With reference to her funds after her husband's death, respondent testified she was told by Freber that he held $5,000 in trust for her and that she would receive $60 a month from the fund; also, that at no time while receiving OAS benefits did she know she had $1,200. Respondent was 75 years of age when she testified and expressed nervousness. As to why respondent knew so little about her and her husband's financial affairs, Freber testified that respondent's husband had no confidence in her ability to handle money, and that shortly before his death he told Freber that he wanted to make him the beneficiary of the $5,000 insurance policy and he wanted him to watch over the funds for respondent's benefit. Because of this, Freber assumed that respondent's husband also wanted Freber to take charge of the bank account on his death. Freber did so, and made the above described payments to respondent from the proceeds of the insurance policy and bank account.

The complaint was on a common count, the allegation being that on August 1, 1956, the defendant became indebted to the plaintiff for money had and received in the sum of $4,262.89. The defendant answered, denying the indebtedness and alleging that the cause of action was barred by the statute of

limitations. (Code Civ. Proc., § 339, subd. 1.) Respondent concedes that she received payments totaling $302.60, the amount of the judgment, within two years of the filing of this action. The trial court made findings to the effect that between December 1950 and August 1, 1956, the defendant received OAS benefits amounting to $4,262.89; that during that period she was ineligible to receive such benefits; that she has not repaid any of the money; that $302.60 was received by respondent after February 1956; that the complaint was for money had and received and no fraud was alleged or proved; and that Code of Civil Procedure, section 339, subdivision 1, precludes the recovery by plaintiff of all of said sum, except the sum of $302.60.

In a short memorandum filed prior to signing the findings the court noted substantially the same matters which later appeared in its findings. In that memorandum the court also stated that under the facts, "the two year Statute of Limitations is applicable and precludes the recovery of the money paid to the Defendant beyond that period. The case of *Department of Social Welfare* v. *Stauffer*, 56 Cal.App.2d 699 [133 P.2d 692], supports this conclusion. Although this may constitute a hardship upon the plaintiff and result in the Defendant's retaining money she is not entitled to, the Court is bound by the law as it exists and change, if desired, is a legislative function."

We agree with the court below that change in the law is a legislative and not a judicial function, but we disagree with the court's interpretation of the law as it exists.

## THE LAW

*Welfare and Institutions Code Sections Applicable*

Section 2163 provides: "No aid under this chapter shall be granted or paid to any person who owns personal property, the value of which, less all encumbrances of record, exceeds one thousand two hundred dollars ($1,200). . . ."

Welfare and Institutions Code, section 2222 provides: "If, at any time during the continuance of aid, the recipient thereof or the husband or wife of the recipient becomes possessed of any property or income in excess of the amount allowed under the provisions of this chapter, the recipient shall immediately notify the board of supervisors of the receipt and possession of such property or income. The board may, on inquiry and with the approval of the State Department of Social Welfare, either cancel the aid or vary the

amount thereof in accordance with circumstances. Any excess aid theretofore paid shall be returned to the United States Government, the State, and the county participating in the granting of such aid, in accordance with the provisions of Section 2024, and shall be recoverable as a debt due proportionately to the State and such county."

Welfare and Institutions Code, section 2223.5 provides: "Notwithstanding the provisions of Sections 2222 and 2223, a recipient who has received aid in good faith, honestly believing himself to be entitled thereto, but who is found to have possessed property in excess of the amount allowed under the provisions of this chapter, or the personal representative of such a deceased recipient, may by way of an affirmative defense, show when, and the circumstances under which, the recipient acquired such property in excess of the amount allowed under the provisions of this chapter. If it is established that the recipient received such aid in good faith, honestly believing himself entitled thereto, he shall be considered to have been ineligible for aid only during the period for which the excess property, if it had been applied to his support at the rate of the aid granted to him, would have supported him. In such case the recipient or his estate shall repay only the aid he received during such period of ineligibility."

*Form of the Complaint—Common Count*

■■■ "Money paid upon a mistake of fact may be recovered under the common count of money had and received." (*Thresher* v. *Lopez*, 52 Cal.App. 219, 220 [198 P. 419].)

■ Fraud may be proved under a complaint on the common count. (*County of San Bernardino* v. *Sapp*, 156 Cal. App.2d 550 [319 P.2d 649]; *Sears, Roebuck* v. *Blade*, 139 Cal. App.2d 580 [294 P.2d 140]; *Adams* v. *Harrison*, 34 Cal. App.2d 288 [93 P.2d 237].)

■ "There is no variance between the pleading and proof in this case. The mere fact that the recipient's duty to make restitution arose from his violation of a statute is immaterial in a suit on a common count. ■■ In an action for money had and received it is generally necessary for the plaintiff to prove only his right to the money and the defendant's possession; and any facts, circumstances or dealings from which it appears that the defendant has in his hands money of the plaintiff which he ought in justice and conscience to pay over to him, are competent evidence to sup-

port the action. (See 4 Am.Jur. p. 532, § 49.)'' (*County of San Bernardino* v. *Sapp, supra,* p. 556.)

*Statutes of Limitation*

■ Contrary to the interpretation given the Stauffer case (56 Cal.App.2d 699) by the trial court, that case is not authority for the proposition that the applicable statute of limitations is Code of Civil Procedure, section 339, subdivision 1, i.e., two years. Said code section prescribes a two-year limitation where the action is upon a ''contract, obligation or liability not founded upon an instrument of writing. . . .'' The Stauffer case holds squarely, at page 702, that the right to recover OAS payments made to ineligible recipients ''is of statutory origin and the right of recovery therein given cannot reasonably be said to be based upon any express or implied contract.''

The applicable statute in such cases is Code of Civil Procedure, section 338, subdivision 1, which fixes three years as the period within which actions ''upon a liability created by statute, other than a penalty or forfeiture'' must be instituted. (*Department of Social Welfare* v. *Stauffer*, 56 Cal.App.2d 699 [133 P.2d 692]; *County of San Bernardino* v. *Sapp*, 156 Cal.App.2d 550 [319 P.2d 649]; *County of Los Angeles* v. *Security First Nat. Bank*, 84 Cal.App.2d 575 [191 P.2d 78]; *People* v. *Union Oil Co.*, 48 Cal.2d 476 [310 P.2d 409].)

Code of Civil Procedure, section 338, subdivision 4, provides a three-year period of limitation in ''An action for relief on the ground of fraud or mistake. The cause of action in such case not to be deemed to have accrued until the discovery, by the aggrieved party, of the facts constituting the fraud or mistake.''

■ The code section makes no distinction between actual fraud, constructive fraud, and mistake insofar as the tolling of the statute is concerned. It commences to run upon discovery in all three cases.

''. . . this [period under Code Civ. Proc., § 338, subd. 4] does not begin to run until the fraud or mistake has been discovered . . . . And these rules relating to the computation of the period from the discovery of the fraud apply as well to the discovery of mistake.'' (*Davis Welding & Mfg. Co.* v. *Advance Auto Body Works, Inc.*, 38 Cal.App.2d 270, 274 [100 P.2d 1067].)

''Those provisions [Code Civ. Proc., § 338, subd. 4] apply as well in cases involving constructive fraud . . . and the

period of limitation is therefore three years from the discovery of the fraud." (*Neet* v. *Holmes,* 25 Cal.2d 447, 467 [154 P.2d 854].)

The same is true with respect to actual fraud. The statute does not run until discovery of the fraud. (*County of San Bernardino* v. *Sapp, supra.*)

Concerning the necessity for exercising diligence in discovering the fraud, the rule is stated in *Vertex Inv. Co.* v. *Schwabacher,* 57 Cal.App.2d 406, 415 [134 P.2d 891], as follows: "When failure to discover fraud is due to lack of diligence, the statute of limitations commences to run from the time it should have been discovered. . . . It has also been said that the means of knowledge are the equivalent of knowledge, but this is subject to the qualification that the position of plaintiff must be such that he is under a duty to make use of such means."

Respondent argues in her brief that (1) the appellant should have discovered her excess assets sooner, and (2) that, in fact, such assets were disclosed to the appellant in February 1956, two years before the action was instituted. The latter statement is incorrect. It is in direct contradiction to the stipulation made by counsel for respondent during the trial, that the county discovered respondent's excess funds "immediately before the Complaint was filed." The complaint was filed February 19, 1958. Respondent's other contention, that the appellant had a duty to discover her excess funds earlier than it did, is without merit. The same objection was urged in *County of San Bernardino* v. *Sapp, supra.* In rejecting it the court held, at page 554: "In the instant case the county relied on the recipient's annual statement made under penalty of perjury that he did not have excess property, and further relied on the routine investigation made by the Welfare Department which did not reveal the fraud practiced by the recipient. On the record before us it appears that the trial court was justified in holding that the annual investigation by the county was reasonable and sufficient, particularly in view of the annual statements furnished by the recipient."

Placed in its most favorable light from the respondent's point of view, we have a case in which she received some $4,200 of state and county funds, during a period that she was ineligible to receive such assistance, and while under a statutory duty to return same; the payments were made under a mutual mistake of fact, viz., neither the respondent nor the

appellant had knowledge of respondent's ownership of excess funds, and promptly upon its discovery of the mistake, appellant instituted this action. We know of no reason, legal or equitable, why Code of Civil Procedure, section 338, subdivision 4, is not applicable.

The Legislature has made unmistakably clear its intention that while those who are entitled to public assistance shall receive it promptly, those who are not eligible shall make restitution of all amounts received but to which they are not legally entitled. (Welf. & Inst. Code, §§ 103.3, 2222, 2223, 2223.5 and 4578.) Both restitution and prosecution are provided in cases of wilful misrepresentation. (Welf. & Inst. Code, §§ 1550, 3006, 3405.) We find no expression of legislative intent which suggests that restitution shall be waived if the state or county, relying on the recipient's sworn statement of eligibility, fails to discover the recipient's excess property and consequently does not institute suit for recovery within three years of making payment. The amount of the respondent's excess property was not great, but the applicable principles are the same whether the excess property be $5,000, $50,000 or $500,000. To suggest, for example, that the Legislature intended to bar recovery where a recipient of OAS benefits was a joint tenant of a bank account in another state containing $50,000, but who had no knowledge thereof because of her husband's secrecy, is not reasonable. We do not believe the question is open to doubt, but if it be so then we apply the rule that "in construing a doubtful statute, that construction is always to be preferred 'which leads to the more reasonable result.' " (*People* v. *Murata*, 55 Cal.2d 1, 7 [9 Cal.Rptr. 601, 357 P.2d 833].) In the absence of a clear legislative mandate we refrain from lending judicial support to the doctrine urged by respondent.

*Department of Social Welfare* v. *Stauffer*, 56 Cal.App.2d 699 [133 P.2d 692], a divided opinion of this court, on which respondent chiefly relies in urging affirmance of the judgment, is not controlling. That was an action by the Department of Social Welfare of the State of California against an administratrix to recover double the amount of OAS payments made to the intestate while he was ineligible to receive any payments by reason of excess personal property. The plaintiff had no knowledge, actual or constructive, of the recipient's ineligibility until the inventory and appraisement was filed nearly a year after the first publication of notice to creditors. Within three weeks thereafter the plaintiff filed its verified

claim with the defendant under Welfare and Institutions Code, section 2223, for double the amount of the money paid to the intestate during the period of his ineligibility. That section provides for such recovery against the estate of the recipient under such circumstances. The defendant rejected the claim the day after it was filed. One week later the plaintiff filed suit. Judgment was for the defendant, the court holding that the claim was upon contract and was barred because it had not been filed within six months after the first publication of notice to creditors. (Prob. Code, §§ 700, 707.)

We have already discussed the fact that this court rejected the trial court's conclusion of law that the action was based on contract, and, held instead, that it was statutory in nature. However, the judgment was affirmed on other grounds, viz., (1) that Welfare and Institutions Code, section 2223 imposed a penalty (repayment of double the amount received during ineligibility); (2) that the applicable statute of limitations in an action by the state to recover a penalty is Code of Civil Procedure, section 340, which fixes one year; and (3) the statute commenced to run from the date the administratrix was appointed and qualified. The majority thus treated the case strictly as one involving the recovery of a penalty. It expressly ruled out all consideration of fraud, holding, "Assuming that in a fraud case the statute of limitations would not start until the discovery of the fraud, such a rule is not of benefit to appellant in the present action . . . the complaint fails to allege fraud. . . . In the absence of allegations of fraud, an action based upon the discovery of the additional property must be brought within the one year period." (Pp. 703-704.) The complaint was not on common count but expressly alleged its reliance on Welfare and Institutions Code, section 2223, and alleged many of the facts in detail. We also saw earlier in this opinion that fraud may be proved under a complaint which pleads simply a common count. (*County of San Bernardino* v. *Sapp, supra,* 156 Cal.App.2d 550; *Sears, Roebuck* v. *Blade, supra,* 139 Cal.App.2d 580; *Adams* v. *Harrison, supra,* 34 Cal.App.2d 288.)

It is not for us to speculate how the court would have ruled in Stauffer had the action been one on common count, for restitution alone, under Welfare and Institutions Code, sections 2222 and 2223.5, as in our case, rather than for the penalty of double payment under Welfare and Institutions Code, section 2223, as in that case. One who is required to return only that which he has received illegally may be in

convenienced and unhappy, but he does not suffer a penalty. The two cases are distinguishable.

 Respondent also urges as grounds for affirmance that the question of fraud is raised by appellant for the first time on this appeal. Respondent is correct in her statement that fraud is not mentioned in the complaint, that there was but one oblique reference to it during the trial, and that the court expressly found that fraud was not alleged or proved. Respondent is incorrect when she states that the subject of fraud is raised for the first time on appeal. The reporter's transcript contains 14 pages of memoranda in the form of letters from respective counsel to the trial court, in which the form of the complaint, and the question of constructive fraud is fully briefed and argued. Those memoranda were filed by leave of court while the court had under submission the appellant's motion for new trial and to vacate and set aside the judgment. Also, in his opening statement and in the oral argument which followed immediately upon the close of the evidence, counsel for the appellant made it clear that the county was proceeding under Welfare and Institutions Code, section 2223.5, *supra*, and that under the county's theory there was no applicable statute of limitations, or, in the alternative, that the statute of limitations did not commence to run until discovery or knowledge by the county that the respondent had received OAS benefits to which she was not entitled.

Although the terms "constructive fraud" and "mistake" are not used in the Welfare and Institutions Code sections with which we are concerned, and were not referred to until the exchange of memoranda in connection with the motion for a new trial and to vacate the judgment, at which time the appellant specifically referred to Code of Civil Procedure, section 338, subdivision 4, the issue was nevertheless before the court as a question of law. Thus, in *County of San Bernardino* v. *Sapp, supra,* 156 Cal.App.2d 550, the county sued the defendant to recover OAS payments made to him when he was ineligible to receive same by reason of his ownership of property in excess of the amounts permitted by statute. In that case, as in ours, the complaint was framed on common count for money had and received, and the answer was a general denial and raised the bar of the statute of limitation. There, as here, the defendant annually filed under oath the required affirmation of eligibility, without which the payments

would have been discontinued. There, as here, the county relied on the defendant's sworn statements of eligibility and had no knowledge of defendant's excess property until shortly before filing suit to recover the payments. There, as here, the defendant contended that (1) the county should have discovered his ineligibility sooner, (2) that not having pleaded fraud, the county may not rely on it as a bar to the statute of limitations, and (3) that the action is barred by Code of Civil Procedure, section 339, subdivision 1, as to all payments made more than two years prior to the date the suit was filed.

The court, in *Sapp*, rejected all of these arguments and held, first, that "It was not necessary . . . to plead fraud in order to rely on it in avoidance of the bar of the statute of limitations" (p. 554) and second, "Fraudulent concealment of a cause of action by affirmative misrepresentation prevents the running of the statute in all cases" (p. 555). (See also *Sears, Roebuck* v. *Blade, supra; Adams* v. *Harrison, supra.*)

The court, in *Sapp*, treated the defendant's concealment as active misrepresentation, i.e., actual fraud. Actual fraud is a question of fact. (Civ. Code, § 1574.) "Constructive fraud consists: 1. In any breach of duty which, without an actually fraudulent intent, gains an advantage to the person in fault . . . by misleading another to his prejudice . . ." (Civ. Code, § 1573.) ▉▉▉ "Fraud assumes so many shapes that courts and authors have ever been cautious in attempting to define it. Each case must be considered on its own facts. (12 Cal.Jur. 705, § 2.) In its generic sense, constructive fraud comprises all acts, omissions and concealments involving a breach of legal or equitable duty, trust, or confidence, and resulting in damage to another. [Citations.] Constructive fraud exists in cases in which conduct, although not actually fraudulent, ought to be so treated—that is, in which such conduct is a constructive or quasi fraud, having all the actual consequences and all the legal effects of actual fraud." (*Estate of Arbuckle*, 98 Cal.App.2d 562, 568 [220 P.2d 950, 23 A.L.R. 2d 372]; 1 Witkin, Summary of California Law, p. 148.) "Constructive fraud, as contrasted to actual fraud, may be defined as a breach of legal or equitable duty which, irrespective of the moral guilt or intent of the fraud feasor, the law declares fraudulent, because of its tendency to deceive others, to violate public or private confidence, or to injure public interests." (*Bell* v. *Bell*, 44 Ariz. 520 [39 P.2d 629]; and see 37 C.J.S., p. 211.)

 In our case the court made a finding that "no fraud is alleged or proved," and then concluded, in reliance on the Stauffer case, that the two-year statute of limitations was applicable, and had run on all but $302 60 of the payments received. In so doing the court misinterpreted the Stauffer case. We are uncertain whether the court's finding that fraud was neither alleged nor proved, when read in the light of the other findings, the conclusions of law, and the court's memorandum, was intended simply as ruling out fraud, actual and constructive, solely because it was not expressly pleaded, or whether it was intended as expressly negating the presence of fraud of any character. To the extent that it constitutes a finding that there was no actual fraud, we are bound by such finding under the substantial evidence rule. (*Viner* v. *Untrecht,* 26 Cal.2d 261 [158 P.2d 3].) But there was no conflict in the evidence as to the respondent's (a) receipt of $4,262.89, and (b) her ineligibility to receive same. Therefore constructive fraud was present. Fraudulent intent is not a necessary element in constructive fraud. (*Estate of Arbuckle, supra; Bell* v. *Bell, supra.*) Under the undisputed facts the question of constructive fraud was one of law, and we are not bound by the trial court's erroneous conclusion drawn from such undisputed facts. As this court held in *Hunter* v. *Sparling,* 87 Cal.App.2d 711, at page 721 [197 P.2d 807] : "The rule applicable to such a situation is well settled. Where a conclusion of law is not supported by the facts found, the conclusion of law must be disregarded. . . . If, as a matter of law, under the admitted facts, he [the trial judge] was wrong as to his conclusion that there was no contract, then the ends of justice will best be served by disregarding that erroneous conclusion and applying the correct law to the admitted facts." (See also *Emsco Paving etc. Corp.* v. *City of Los Angeles,* 176 Cal.App.2d 760 [1 Cal. Rptr. 814].) For the same reason the court's "finding" (more correctly a conclusion of law) that Code of Civil Procedure, section 339, subdivision 1, controlled, rather than Code of Civil Procedure, section 338, subdivision 4, must be disregarded.

 We hold, therefore, (1) that whether it be called mistake or constructive fraud, the issue was raised by the pleadings; (2) that the statute of limitations did not commence to run until discovery by the appellant in February,

1958, of the respondent's ineligibility; and (3) that the county's suit was brought timely.

The judgment is reversed, and the trial court is directed to enter judgment for the plaintiff in the sum of $4,262.89.

Bray, P. J., and Tobriner, J., concurred.

A petition for a rehearing was denied March 14, 1961, and respondent's petition for a hearing by the Supreme Court was denied April 19, 1961.