[No. A061347. First Dist., Div. Three. Dec. 19, 1994.]

COUNTY OF MARIN ASSOCIATION OF FIREFIGHTERS et al.,
Plaintiffs and Respondents,
MARIN COUNTY EMPLOYEES RETIREMENT ASSOCIATION et al.,
Defendants and Appellants.

1640

**Counsel**

Thomas G. Hendricks, County Counsel, for Defendants and Appellants.

Carroll, Burdick & McDonough, Christopher D. Burdick and Lisa Lee Pate for Plaintiffs and Respondents.

## OPINION

CHIN, J.—The Board of Retirement (Board) of the County of Marin (Marin) and the Marin County Employees Retirement Association (collectively Retirement Association) appeal from a judgment that grants a peremptory writ of mandate and declaratory relief in favor of respondents County of Marin Association of Firefighters (CMAF), Dick Bissig, Richard Lopez, Clarence Nunes, and George Thornton (collectively Firefighters). Retirement Association contends that, under the County Employees Retirement Law of 1937 (CERL) (Gov. Code, § 31450 et seq.),[1] the trial court erred in reversing the Board's decision regarding the extent to which it would include "holiday pay" as an element of compensation in computing retirement benefits for CMAF members. Retirement Association also contends that the trial court applied the wrong statute of limitations to its claim for unpaid retirement contributions relating to "holiday pay" and erred in awarding attorney fees. We agree that the trial court applied the wrong statute of limitations and reverse on that issue. We affirm the trial court's other determinations.

### FACTUAL AND PROCEDURAL BACKGROUND

Pursuant to section 3501, CMAF represents Marin's firefighters/engineers, paramedics, fire lieutenants, and fire captains as a recognized employee organization. All CMAF members are safety members within the meaning of section 31469.3. Beginning January 1, 1975, CMAF safety members received pay for holidays (holiday pay) pursuant to a collective bargaining agreement with Marin, which provided: "Holidays will be paid at the rate of one duty day's pay at the straight time rate in addition to the basic monthly pay for each day listed in subsections B., 1., and 2., above, payable twice each year."

When CMAF safety members retire, their pension is a function in part of their "final compensation." (See §§ 31664, 31727.2, 31727.4.) Under section 31462.1, " '[f]inal compensation' means the average annual *compensation earnable* by a member during any year elected by a member at or before the time he files an application for retirement, or, if he fails to elect, during the year immediately preceding his retirement." (Italics added.) In turn, section 31461 defines " '[c]ompensation earnable' " as "the average compensation as determined by the board, for the period under consideration upon the basis of the average number of days ordinarily worked by persons in the same grade or class of positions during the period, and at the same rate of pay."

By letter dated December 12, 1990, counsel for CMAF requested that the Board, which manages the retirement system, include holiday pay as final

---

[1] Unless otherwise indicated, all further statutory references are to the Government Code.

compensation within the meaning of section 31462.1. At a meeting on March 13, 1991, the Board adopted the opinion of its attorney, Thomas G. Hendricks, that holiday pay was mandatorily includable as final compensation and in determining pensions. It further ordered that Hendricks and County Administrator Thomas Campanella meet with CMAF to determine the effective date for inclusion of holiday pay and the amount of any arrears contributions necessary to fund the increased pensions resulting from this change.

During the ensuing meetings, Board representatives and Marin advised CMAF that, if the Board elected (or a court ordered) full retroactive credit for holiday pay, the Board would demand full arrears contributions, plus interest, retroactively to 1975.[2] CMAF indicated that its members would be willing to make arrears contributions, plus interest, for a period not to exceed three years prior to March 13, 1991, the date that the Board adopted its counsel's opinion. Ultimately, the parties were unable to reach agreement on these issues. Accordingly, at a meeting on April 8, 1992, the Board determined that it would include holiday pay as part of final compensation only prospectively. It ordered that holiday pay "be prorated or calculated on a two-tier basis, under which all service rendered through April 1992 would be pensioned at 'base pay' only and all service rendered after April 1992 would be pensioned at 'base pay plus holiday pay,' all on a pro rata basis." Under this formula, no arrears contributions were necessary.

On May 15, 1992, Firefighters filed this action challenging the Board's decision. The petition and complaint asked the court to compel Retirement Association to set aside the Board's decision to include holiday pay as final compensation only prospectively and to use a two-tiered formula for calculating benefits. Firefighters also requested a declaration that holiday pay constitutes final compensation "without 'proration' or 'tiering,'" and "that any 'arrears contribution' liability or obligation of a safety member . . . is limited to three (3) years prior to March 13, 1990 [sic], as provided under California Code of Civil Procedure section 338[, subdivision] (a) . . . ."[3] Finally, the complaint requested an award of attorney fees pursuant to sections 800 and 31536 and Code of Civil Procedure section 1021.5.

Both sides moved for judgment on the pleadings. After hearing, the court denied Retirement Association's motion and granted Firefighters' motion

---

[2] The Board's actuaries calculated that full arrears contributions could be as much as $6,000 for some individuals.

[3] Other portions of the complaint and subsequent proceedings demonstrate that Firefighters intended to refer to March 13, 1991, not 1990.

with leave to amend. Given Retirement Association's "conce[ssion] that holiday pay is *mandatorily* includable" as an element of final compensation, the court held that section 31461 did not give the Board discretion to include holiday pay only prospectively. It granted Retirement Association leave to amend on the issue of the applicability of Code of Civil Procedure section 338, subdivision (a), which establishes a three-year statute of limitations for "[a]n action upon a liability created by statute, other than a penalty or forfeiture . . . ," because its answer did "not adequately raise a claim or defense" on this issue, but "merely request[ed] the court to choose a period . . . ."

Retirement Association filed an amended answer, which denied that "any statute of limitation[s] can limit" its ability to obtain arrears contributions for holiday pay. On November 30, 1992, the court held a bench trial on the statute of limitations question. It subsequently issued a statement of decision holding that "Code of Civil Procedure section 338[, subdivision] (a) limits 'arrears contribution' liability to three years" and that "the Board can only reach back three years before [March 13, 1991, the date] it first accepted County Counsel's conclusion that holiday pay was mandatorily includable in 'compensation earnable.'" The court also awarded attorney fees under section 31536 "because [Firefighters'] efforts resulted in a reversal of the Board's prior decision affecting a valuable pension right" and under Code of Civil Procedure section 1021.5 "because [Firefighters] forced the Board, in the face of its steadfast refusal to comply with [the statutes], to end an unlawful practice and to properly include holiday pay in 'final compensation.' [Citations.]" After entry of judgment, Retirement Association filed this timely appeal.

## DISCUSSION

As Retirement Association explains in its opening brief, this case does not require us to determine "whether holiday pay should be included as a matter of compensation earnable . . . ." Retirement Association concedes that, under the particular facts at issue, "holiday pay . . . should be included as compensation earnable." What we must determine is "when holiday pay should be included as compensation," and the extent to which CMAF members must pay arrears contributions and interest to compensate for Retirement Association's failure to account for holiday pay in making salary deductions to fund the retirement system.

 Retirement Association first argues that section 31461 gives it the discretion to include holiday pay only prospectively in computing pension

benefits. To support its contention, it cites the language of the section that defines " '[c]ompensation earnable' " as "the average compensation *as determined by the board, for the period under consideration* . . . ." (Italics added.) It argues that in *Guelfi v. Marin County Employees' Retirement Assn.* (1983) 145 Cal.App.3d 297 [193 Cal.Rptr. 343] (hereafter *Guelfi*), Division Two of this appellate district "clearly determined that . . . [section] 31461 authorizes the . . . Board to determine what compensation is earnable and when such compensation should be viewed as earnable, independent from the wishes of [CMAF] members . . . ."

Although we agree that *Guelfi* is relevant to this appeal, we find that it supports Firefighters' position, not Retirement Association's. The court stated the issue in *Guelfi* as whether retired Marin police officers were "entitled, under [CERL], to have their disability retirement payments calculated on the basis of preretirement earnings *including* amounts received for overtime, educational incentive pay and uniform allowance." (*Guelfi, supra,* 145 Cal.App.3d at pp. 299-300, original italics.) It answered this question in the negative, finding that the uniform allowance did not constitute " '[c]ompensation' " under section 31460, and that the other two items did not fall within section 31461's definition of " '[c]ompensation earnable.' " (*Guelfi, supra,* 145 Cal.App.3d at pp. 303-307.) Implicit in the court's phrasing of the issue and its discussion is that CERL would have entitled the police officers to have their benefits calculated on the basis of any items that met the statutory definition of " '[c]ompensation earnable.' "[4] If, as Retirement Association contends, the Board has discretion to exclude items that meet the statutory definition, it would have been unnecessary for the court to determine whether the items at issue in *Guelfi* met that definition.

Contrary to Retirement Association's contention, this interpretation does not render any of section 31461 superfluous. As *Guelfi* explains, section 31461 "vest[s] the Board with authority to determine, according to the guiding language contained therein, which elements of compensation constitute 'compensation earnable' for purposes of inclusion or exclusion from the calculation of 'final compensation.' " (*Guelfi, supra,* 145 Cal.App.3d at p. 305.) However, nothing in the statute or in *Guelfi* gives the Board, having determined that an element of compensation meets the statutory definition of " '[c]ompensation earnable' " for a particular year, the discretion to exclude that element in calculating benefits based on the retiree's compensation for that year.

---

[4]Regarding educational incentive pay, the court later stated: "The *determinative* issue here is whether that 'compensation' falls within the narrowing definition of 'compensation earnable.' " (*Guelfi, supra,* 145 Cal.App.3d at p. 306, italics added.) This issue, however, would not have been determinative if the Board had discretion to exclude items that met the statutory definition of " '[c]ompensation earnable.' "

*Guelfi* also rebuts Retirement Association's claim that section 31461 gives the Board authority to select the relevant period for computing average compensation. In setting forth the facts, the court stated: "During the respective years *selected by [the police officers] for purposes of defining their 'final compensation' (§ 31462.1)*, upon which computation of retirement allowance is based (§ 31727.4), each received pay for certain unspecified hours of overtime worked, and received monthly uniform allowances and educational incentive pay. [The Board], however, computed [their] disability retirement allowances according to a determination of 'final compensation' which did not include such items of payment." (*Guelfi, supra,* 145 Cal.App.3d at p. 300, italics added.) Thus, the question *Guelfi* answers is whether the disputed items constituted " '[c]ompensation earnable' " during the years that the police officers selected pursuant to section 31462.1.[5] We now make explicit *Guelfi*'s implicit understanding of CERL; the phrases "for the period under consideration" and "during the period" in section 31461 refer to the relevant time period under section 31462.1 (or section 31462 if it applies instead).

The legislative history of these sections supports our conclusion. Former section 8.5 of CERL, as originally enacted, provided: " 'Compensation earnable' by a member shall mean the compensation as determined by the retirement board, which would have been earned by the member had he worked throughout the period under consideration, the average number of days ordinarily worked by persons in the same grade or class of positions as the positions held by him during such period, and at the rates of compensation attached to such positions, it being assumed that during any absence he was in the position held by him at the beginning of such absence." (Stats. 1937, ch. 677, § 8.5, pp. 1898-1899.) The very next section provided: " 'Final compensation' means the average annual compensation earnable by a member during the three years immediately preceding his retirement." (Stats. 1937, ch. 677, § 9, p. 1899.) The language and proximity of these provisions clearly indicate that the "period under consideration" to which former section 8.5 referred was the three-year period that former section 9 described immediately thereafter.

The Legislature retained the same proximity, and most of the same language, of these sections when it enacted title 3 of the Government Code in 1947. Section 31461 defined " '[c]ompensation earnable' " as "the average compensation as determined by the board, for the period under consideration

---

[5]In its later discussion, the court referred to amounts of educational incentive pay that the police officers received "[f]or the periods in question . . . ." (*Guelfi, supra,* 145 Cal.App.3d at p. 304.) This is an obvious reference to the periods the police officers designated pursuant to section 31462.1.

upon the basis of the average number of days ordinarily worked by persons in the same grade or class of positions during the period, and at the same rate of pay. The computation for any absence shall be based on the compensation of the position held by him at the beginning of the absence." (Stats. 1947, ch. 424, § 1, p. 1264.) The very next section, section 31462, defined " 'Final compensation' " in exactly the same terms as former section 9, i.e., "the average annual compensation earnable by a member during the three years immediately preceding his retirement." (Stats. 1947, ch. 424, § 1, p. 1265.) Despite the slight change in language in section 31461, "the period under consideration" to which that section referred was the three-year period that section 31462 described immediately thereafter. The subsequent enactment of provisions between these sections (§§ 31461.1, 31461.2, 31461.3) and amendment of section 31462 did not alter this interrelationship. The enactment of section 31462.1 simply provided an alternative definition of "the period under consideration" to which section 31461 referred, applicable where expressly adopted. Thus, we find that the court properly required the Board to include holiday pay as an element of final compensation on a retroactive basis.

■ Having determined the Board's duty to include this element as final compensation, we must now determine the extent to which it can seek arrears contributions and interest from CMAF members to compensate for its failure to account for holiday pay in making salary deductions to fund the retirement system. *Barrett v. Stanislaus County Employees Retirement Assn.* (1987) 189 Cal.App.3d 1593 [234 Cal.Rptr. 900] (hereafter *Barrett*) confirms the Board's power to seek these amounts. There, a superior court and Court of Appeal found that CERL required the Board of Retirement of the Stanislaus County Employees Retirement Association (Stanislaus Retirement Board) to reclassify certain work program supervisors from miscellaneous members to safety members, retroactive to their initial dates of employment as work program supervisors. (*Id.*, at pp. 1597-1599, 1609.) Under CERL, reclassification entitled affected employees to earlier retirement eligibility and greater pension benefits. (*Id.*, at p. 1597, fn. 1.) The Stanislaus Retirement Board then determined " '. . . that an eligible member should not receive credit as a safety member for prior service as a Work Program Supervisor unless the member contributes the additional contributions, including contributions of interest, which the member would have made if he had been treated as a safety member from his initial date of service in that position . . . .' " (*Id.*, at p. 1599.)

Plaintiffs challenged this determination, contending that the Stanislaus Retirement Board "had no statutory or common law power to demand

'arrears contributions' for members who were misclassified through no fault of their own . . . ," and "was unentitled to any interest on contributions whatsoever." (*Barrett, supra*, 189 Cal.App.3d at p. 1600.) Plaintiffs argued in part that "equitable considerations" barred the Stanislaus Retirement Board "from demanding arrears contributions." (*Id.*, at p. 1608.) Specifically, they contended that imposition of arrears liability "would result in a 'drastic financial impact' because they would have to pay up to 20 years of contributions including interest over a relatively brief period of time." (*Id.*, at p. 1609.) The superior court agreed, holding that the Stanislaus Retirement Board "had no legal authority, power, or ability under [CERL] to request arrears contributions of principal and/or interest in cases where the retirement [b]oard erroneously misclassified employees . . . ," and that ". . . it would be unfair and inequitable to require the plaintiffs to make such repayments to the retirement [b]oard, which was primarily responsible for the alleged arrearage through its own actions." (*Id.*, at pp. 1600-1601.)

The appellate court in *Barrett* reversed, finding that the Stanislaus Retirement Board had the power under CERL to collect both arrears contributions and interest for the period in question. It explained: "A review of the entire statutory scheme reveals a retirement system based upon contributions by both employer and employee (. . . §§ 31453, 31453.5, 31558-31567, 31581) and the crediting of interest on contributions by both employer and employee. Thus, imposition of an arrears contributions obligation, with regular interest thereon, would place plaintiffs in the position they would have been in had they been properly classified from January 1, 1971, the effective date of the safety member retirement program in Stanislaus County." (*Barrett, supra*, 189 Cal.App.3d at p. 1612.) The court rejected plaintiffs' equitable argument, noting that CERL required Stanislaus County to contribute a portion of the retroactive contributions and authorized the county board of supervisors to deposit some or all of a member's normal contributions for the member's benefit, and that plaintiffs could seek low interest or no interest loans to make the payments. (*Id.*, at pp. 1609-1610.) Finally, the court reasoned that imposition of an arrears obligation did not deprive plaintiffs of the benefit of their bargain, but merely required them "to pay their quid pro quo. They will receive the higher pension benefits retroactively but are required, as are all other safety members, to pay retirement contributions commensurate with the formula contributions paid by all other safety members during the entire course of their employment." (*Id.*, at p.

1608, fn. omitted.) Thus, *Barrett* establishes that the Board in this case has the power to seek both arrears contributions and interest.[6]

What *Barrett* does not establish is whether there is a time limit on this power. Although the court allowed recovery for the entire period at issue, it did not specifically address whether some statute of limitations restricted the Stanislaus Retirement Board's power to seek arrears payments and interest. The parties apparently did not raise the issue.[7] Thus, *Barrett* is not instructive on this question. (See *In re Tartar* (1959) 52 Cal.2d 250, 258 [339 P.2d 553] [cases are not authority for propositions not considered].)

■ Retirement Association argues that various provisions of CERL "are indicative of [a] legislative scheme that suggests that all the prospective benefits be funded on an actuarial analysis and basis . . . ." According to Retirement Association, these provisions establish a "statutory command . . . that the benefits in general terms must be funded by contributions of the employer . . . and the Firefighters . . . ." Because these provisions "are more specific on the issue than Section 338[, subdivision] (a) of the Code of Civil Procedure," Retirement Association continues, they "prevail over the general limitations period contained in the Code of Civil Procedure . . . ." Thus, Retirement Association argues that the Code of Civil Procedure's limitations periods, while applicable "to the denial of a statutory pension right . . . ," do not apply "to the obligation to fund the benefits payable."

We disagree that CERL confers on Retirement Association a right to recover arrears contributions and interest unconstrained by the Code of Civil Procedure's limitations periods. Code of Civil Procedure section 312 provides: "Civil actions, without exception, can only be commenced within the periods prescribed in this title, after the cause of action shall have accrued, unless where, in special cases, a different limitation is prescribed by statute." The ensuing sections of the Code of Civil Procedure "specif[y] the limitations applicable to a wide variety of actions, and then to rebut the possible inference that actions not therein specifically described are to be regarded as exempt from limitations," Code of Civil Procedure section 343 "specifie[s] a

---

[6]In this case, Firefighters make equitable arguments similar to the ones *Barrett* rejected. This is not surprising, given that plaintiffs in *Barrett* had the same counsel as Firefighters. What is surprising is counsel's initial failure in this case to discuss the fate of these arguments in *Barrett* or even to mention that decision. We discovered *Barrett* through our own research, and had to request supplemental briefing regarding its impact on this appeal.

[7]Retirement Association concedes that the applicability of Code of Civil Procedure section 338 "was apparently not raised by the work program supervisors" in *Barrett*. Similarly, Firefighters assert that "*Barrett* did not address, nor did the parties raise, the question of whether the statute of limitations applies to 'arrears contributions.' "

four-year limitation upon 'an action for relief not hereinbefore provided for' [citation] . . . ." (*Bogart* v. *George K. Porter Co.* (1924) 193 Cal. 197, 201 [223 P. 959, 31 A.L.R. 1045].) Thus, where the Legislature intends that another or no limitations period applies, it must say "so in clear and unmistakable language. [Citations.]" (*Ibid.*; see also *Union Paving Co.* v. *City Council* (1961) 189 Cal.App.2d 440, 442 [11 Cal.Rptr. 351].) The provisions of CERL that Retirement Association cites contain no language that establishes a statute of limitations for collection of arrears contributions or exempts Retirement Association's claim for arrears contributions and interest from the Code of Civil Procedure's limitations periods.[8] (Cf. Code Civ. Proc., § 348 ["there is no limitation" applicable to an action to recover money deposited with any bank]; Pen. Code, § 799 [certain prosecutions "may be commenced at any time"]; see *Amie* v. *Superior Court* (1979) 99 Cal.App.3d 421, 424-427 [160 Cal.Rptr. 271] [rejecting contention that no statute of limitations applied to county's right to recover reimbursement for public assistance payments].)

■ Instead, following *People* v. *Union Oil Co.* (1957) 48 Cal.2d 476 [310 P.2d 409] (hereafter *Union Oil*), we find that Code of Civil Procedure section 338, subdivision (d), governs Retirement Association's claim to arrears contributions and interest. That section provides a three-year statute of limitations for "[a]n action for relief on the ground of fraud or mistake." In *Union Oil*, the Supreme Court applied the predecessor to this section, Code of Civil Procedure former section 338, subdivision 4, to an action of the State of California (hereafter State) to recover interest that it had improperly paid in refunding tax overpayments. (*Union Oil, supra*, 48 Cal.2d at pp. 482-484.) Under a statutory amendment effective prior to the State's payment of the tax refund, the taxpayer was not entitled to interest. (*Id.*, at p. 479.) Nevertheless, ". . . the employees of the franchise tax office believed that authority still existed to continue interest payments . . . ." (*Id.*, at p.

---

[8]The Board cites sections 31453, 31453.5, 31454, 31454.1, 31639.25 and 31639.3. Section 31453 requires the Board to make recommendations regarding changes in members' contribution rates based on an actuarial valuation. Section 31453.5 permits the Board to calculate county or district contribution rates so as "to provide for the payment of all prospective benefits of [a] member." Section 31454 requires a county board of supervisors to adjust members' contribution rates in accordance with the Board's recommendations. Section 31454.1 discusses " 'meet and confer' " obligations with respect to the actuarial valuation, and generally expresses the Legislature's "intent . . . in enacting th[e] section . . . to insure the solvency and actuarial soundness of the retirement systems governed by this chapter by preserving the independent nature of the actuarial evaluation process." Section 31639.25 provides that "[t]he normal rates of contributions shall be such as will provide an average annuity at age 50 equal to one one-hundredth of the final compensation of safety members, according to the tables adopted by the board of supervisors, for each year of service rendered after entering the system." Section 31639.3 sets forth the contribution rate of each safety member based on the member's age at the time of entry into the retirement system.

482.) The court explained that "a mistake of law was involved . . . ," and that the mistake was "the very basis or gravamen of [the State's right to recovery]. Accordingly, the applicable statute [of limitations was] the three-year statute governing an action for relief on the ground of mistake. [Citation.]" (*Id.*, at p. 483.) The court recognized that "as a general rule a mistake of law is of no legal consequence . . . ." (*Ibid.*) However, it found the general rule inapplicable to a claim for "the recovery of public moneys paid out through mistake . . . ." (*Ibid.*)

Following *Union Oil*, we find that the three-year statute of limitations for relief on the ground of mistake applies to Retirement Association's claim for arrears contributions and interest. Such a claim would be one for recovery of public moneys paid out through mistake. (See *Barrett, supra,* 189 Cal.App.3d at p. 1602 [". . . any money paid by a governmental agency without authority of law may be recovered"]; *Foster* v. *Pension Board* (1937) 23 Cal.App.2d 550, 555 [73 P.2d 631] [city pension board could recover overpayments whether they were made under mistake of fact or law].) The money was paid out in the form of salary to the employees. The mistake was in the failure to include holiday pay as an element of compensation and the consequent failure to deduct contributions for holiday pay from employee paychecks. (See §§ 31625, 31625.1.) Like the mistake at issue in *Union Oil*, the mistake here at issue "is not a mere incident to [the] right to recovery. Rather it is the very basis or gravamen of [the right of] action . . . ." (*Union Oil, supra,* 48 Cal.2d at p. 483.) Accordingly, Code of Civil Procedure section 338, subdivision (d), applies to Retirement Association's claim for arrears contributions and interest.[9]

Our determination that subdivision (d) of Code of Civil Procedure section 338 applies instead of subdivision (a) requires that we reverse the judgment to the extent that it prohibits Retirement Association from recovering contributions that were due more than three years before March 13, 1991, the date that the Board first accepted county counsel's conclusion that holiday pay was mandatorily includable in compensation earnable.[10] Subdivision (d) provides that the cause of action for relief on the ground of mistake "is not to be deemed to have accrued until the discovery, by the aggrieved party, of

[9]In responding to our request for supplemental briefing, Firefighters agree that this section applies to recovery of arrears contributions because "this dispute springs from the Board's mistake of law" in "fail[ing] to collect contributions for holiday pay since 1975."

[10]Moreover, because we find Code of Civil Procedure section 338, subdivision (a), inapplicable, we need not address Retirement Association's contention, which it premises on the applicability of subdivision (a), that the statute of limitations does not begin to run until retirement of CMAF members, which is the date that "the right to payment of a retirement allowance arises . . . ."

the facts constituting the fraud or mistake." (Code Civ. Proc., § 338, subd. (d).) As Firefighters explain, under this subdivision, "the date a mistake is discovered, not the date the Board failed to make appropriate deductions for . . . holiday pay, is the date upon which the Board's cause of action 'accrued.' " According to Firefighters, the Board discovered its mistake on March 13, 1991, and "[t]he statute of limitations runs" from that date.[11]

However, Firefighters are incorrect in asserting that Code of Civil Procedure section 338, subdivision (d), limits the Board's recovery "to three years of contributions prior to the date on which the Board filed suit to obtain these uncollected contributions." The effect of subdivision (d) is to delay *accrual* of the cause of action, and it requires filing of suit within three years of accrual. So long as this requirement is satisfied, subdivision (d) does not in any way limit a plaintiff's ability to recover for events that occurred more than three years prior to accrual or filing. (See *Neet* v. *Holmes* (1944) 25 Cal.2d 447, 467-468 [154 P.2d 854] [complaint filed within three years of alleged discovery of fraud was timely even as to mining claims located more than three years before filing]; *County of Santa Cruz* v. *McLeod* (1961) 189 Cal.App.2d 222, 225-239 [11 Cal.Rptr. 249] [county filing action within three years of discovering constructive fraud could recover old age security payments paid eight years before discovery].) Thus, the trial court erred in limiting the Board to recovering contributions for holiday pay paid after March 13, 1988.[12]

■ Firefighters also contend that Code of Civil Procedure section 340 limits the recovery of interest on arrears contributions to one year. That section provides a one-year statute of limitations for "[a]n action upon a statute for a penalty or forfeiture . . . ." (Code Civ. Proc., § 340, subd. (1).) Without citing any supporting authority, Firefighters contend that interest on arrears contributions "is a penalty" within the meaning of this section.[13]

Following *County of Los Angeles* v. *Ballerino* (1893) 99 Cal. 593 [34 P. 329] (hereafter *Ballerino*), we reject this contention. There, the Supreme

---

[11]This assertion constitutes an admission, and we therefore need not further consider the date of accrual of Retirement Association's cause of action.

[12]Firefighters cite no authority for their assertion that Code of Civil Procedure section 338, subdivision (d), "limits not only the date at which a lawsuit must be filed, but how far back the Retirement Board can reach for arrears contributions."

[13]Firefighters further suggest, again without citing any supporting authority, that its members "should not be liable for *any* interest" because the "Board's refusal and failure to pension holiday pay caused the contribution shortfall." The trial court's statement of decision, which Firefighters' counsel prepared, states that Firefighters "are not liable for any interest on 'arrears contributions' because [the] Board's refusal and failure to include holiday pay in 'final compensation,' despite CERL's requirement that the Board do so, caused any contribution shortfall." The judgment, however, is silent on this issue and, on appeal, Firefighters do not rely on or even cite the statement of decision on this point. In any event, to the extent

Court held Code of Civil Procedure section 340 inapplicable to a county's statutory action to recover delinquent taxes plus interest and a 5 percent delinquency. (*Ballerino, supra,* 99 Cal. at pp. 594-596.) It explained that "a penalty" within the meaning of Code of Civil Procedure section 340, subdivision (1), is "one which an individual is allowed to recover against a wrong-doer, as a satisfaction for the wrong or injury suffered, and without reference to the actual damages sustained, or one which is given to the individual and the state as a punishment for some act which is in the nature of a public wrong." (*Ballerino, supra,* 99 Cal. at p. 596.) The court then held that the statute authorizing the delinquency action did not provide a penalty, stating: "Even in so far as the plaintiff seeks to recover the additional percentage which defendant has incurred by reason of his delinquency, the statute contemplates that the added *per cent* sued for here shall be collected at the same time and in the same manner as the delinquent tax, and the right to recover is not lost until the cause of action upon such delinquent tax is barred. It is not in terms imposed as a penalty or punishment . . . , and is only a mere incident to the cause of action arising upon the statutory liability to pay the taxes duly levied upon property which has been assessed in accordance with law." (*Ibid.*) Similarly, the interest on arrears contributions is not a penalty, but is "a mere incident" to Retirement Association's claim for arrears contributions. (*Ibid.*) Therefore, Code of Civil Procedure section 340 is inapplicable.

■ Finally, we reject Retirement Association's attack on the trial court's award of attorney fees under section 31536.[14] That section provides in relevant part: "If a superior court reverses the denial by the board of an application . . . for a claim based on a claimed pension right or benefit, the superior court in its discretion may award reasonable attorney's fees as costs to the member . . . who successfully appealed the denial of such application. . . ." As Retirement Association correctly recognizes, this section vests the trial court with discretion to award attorney fees. (See *Van Hook* v. *Board of Retirement* (1983) 148 Cal.App.3d 714, 718-719 [196 Cal.Rptr. 186].) "Where, as here, a trial court has discretionary power to decide an issue, its decision will be reversed only if there has been a prejudicial abuse of discretion." (*Baggett* v. *Gates* (1982) 32 Cal.3d 128, 142-143 [185 Cal.Rptr. 232, 649 P.2d 874].) The court awarded fees because it found that the action had "resulted in a reversal of the Board's prior decision affecting a valuable pension right." The court did not abuse its discretion in making

Firefighters are asserting this argument on appeal, following *Barrett, supra,* 189 Cal.App.3d at pages 1610-1612, we reject it.

[14]Because we affirm the fee award under section 31536, we need not address the propriety of the court's additional reliance on Code of Civil Procedure section 1021.5 in awarding fees.

this determination.[15] Moreover, pursuant to section 31536, we grant Firefighters' request for an award of attorney fees on appeal. (See *Morcos* v. *Board of Retirement* (1990) 51 Cal.3d 924, 926-930 [275 Cal.Rptr. 187, 800 P.2d 543].) We remand to the trial court to determine the amount of fees. (See *Hadley* v. *Krepel* (1985) 167 Cal.App.3d 677, 687 [214 Cal.Rptr. 461].)

The judgment is reversed insofar as it holds that Code of Civil Procedure section 338, subdivision (a), limits Retirement Association to recovering contributions for holiday pay paid after March 13, 1988. In all other respects, the judgment is affirmed. The matter is remanded to the trial court for determination of the amount of attorney fees to which Firefighters are entitled for this appeal. Firefighters are awarded costs on appeal.

White, P. J., and Merrill, J., concurred.

Appellants' petition for review by the Supreme Court was denied March 2, 1995.

---

[15]Our determination regarding the statute of limitations applicable to arrears liability does not alter this conclusion.