[Civ. No. 41217. Second Dist., Div. Two. Sept. 20, 1973.]

MORRIS J. STARSKY, Plaintiff and Appellant, v.
BOARD OF TRUSTEES OF THE CALIFORNIA STATE COLLEGES
et al., Defendants and Respondents.

**COUNSEL**

Ronald F. Merlino for Plaintiff and Appellant.

Evelle J. Younger, Attorney General, Elizabeth Palmer, Assistant Attorney General, Edward M. Belasco and Thomas E. Warriner, Deputy Attorneys General, for Defendants and Respondents.

## OPINION

**ROTH, P. J.**—By the judgment appealed from the trial court (invoking its equitable power) refused to mandate respondents to continue in force a written contract wherein respondents[1] employed appellant as an associate professor commencing September 1, 1971, for one year. Appellant asserts that the contract involved is complete in all respects as required by the Administrative Code sections 42700(j), 42800, 42802 and was not terminated or rescinded as specifically required by sections 24306, 24308 and 24309 of the Education Code.

The record, findings and a recital in the judgment show that the judgment is predicated on the conclusions of the trial court that there was no contract, but if there was, it was induced by dishonest conduct on the part of appellant which equated with unclean hands and that since mandate was not a matter of right but was an appeal to the conscience of the chancellor, a court of equity could reject enforcement of performance thereof. (*Sipper* v. *Urban* (1943) 22 Cal.2d 138 [137 P.2d 425]; *Lukens* v. *Nye* (1909) 156 Cal. 498 [105 P. 593]; *Draper* v. *Grant* (1949) 91 Cal. App.2d 566 [205 P.2d 399].) ██ However, as we point out *infra*, equity must follow the law. (*Lass* v. *Eliassen* (1928) 94 Cal.App. 175, 179 [270 P. 745]; *People* v. *One 1940 Ford V-8 Coupe* (1950) 36 Cal.2d 471, 476 [224 P.2d 677].)

In pertinent part, the trial court found that appellant was aware "that he had been discharged by . . . Arizona State University"; that he "was not candid in his application for employment . . . when he failed to reveal . . . [the discharge;] . . ." and that "he was never in fact actually employed . . ." and then concluded that appellant "wilfully omitted material facts from his . . . application . . .;" and by way of recital the trial court reiterated in its judgment "The court having found that petitioner wilfully omitted material facts from his employment application and that he was not in fact employed by California State Colleges, Dominguez Hills, . . ."

---

[1]Board of Trustees of the California State Colleges; Glenn S. Dumke, chancellor, California State Colleges; Leo F. Cain, president, California State College, Dominguez Hills.

The stipulated record consists of the pleadings, declarations and affidavits supplemented by exhibits. There was no oral testimony.

The record shows without dispute that during the summer of 1971 appellant applied for and on July 23, 1971, he was interviewed by several faculty members in respect of an appointment as an associate professor of philosophy in the department of philosophy at California State College, Dominguez Hills (College). A question is raised as to whether appellant was truthful and candid in that interview. After the interview the president of College, on August 3, 1971, in a letter to appellant, stated in pertinent part: ". . . I am pleased to offer you the position of Associate Professor of Philosophy at the California State College, Dominguez Hills. We also expect you to act as chairman of the Department of Philosophy for an initial two-year term. This appointment is for the 1971-72 academic year and carries an annual salary of $12,384 which is paid in twelve monthly installments."

After discussing the proposed teaching assignments the letter concluded: "We should appreciate your reply to our offer within ten days, or sooner, if possible. Please include the completed Statement of Professional Preparation and Experience and the Faculty Data Sheet with an acceptance letter. The Oath is required of all employees of the State of California and is enclosed at this time for your information only. The Oath and other documents must be executed in our Personnel Office before you report for duty."

There is no dispute that on or about August 9, 1971, appellant accepted the appointment and thereafter, on or about August 21, 1971, appellant went to the personnel office of College where he completed the necessary documents. One of the documents was Statement of Professional Preparation in which he indicated that he had not been discharged from a former employment. On August 25, 1971, appellant returned to College and was issued his office key. On September 3, 1971, appellant sent a form ordering textbooks for his class to the office of the Dean.

On September 7, 1971, appellant, by letter, was informed by the president of College that he would not be appointed to the faculty of College because he had: (1) in fact been discharged from Arizona State University (ASU); and (2) during the July interview he had not been candid in stating his reasons for leaving ASU. On September 9, 1971, appellant's attorney, by letter to the president of College, stated that appellant had not been discharged from ASU and had not furnished any false, erroneous or misleading information in any of the required documents. The attorney's letter made clear the legal and factual point that appellant had been employed

on a year to year basis by ASU and that appellant had in fact not been discharged, but that his employment was not renewed. Two days later, a letter from the vice chancellor of College to the attorney for appellant stated that the reason for not hiring appellant was his lack of candor in explaining the reasons for his departure from ASU.

It is bromidically settled that all findings supported by substantial evidence and proper inferences therefrom and all presumptions reasonably flowing from the record must be resolved in favor of a judgment. (*Crawford v. Southern Pacific Co.,* 3 Cal.2d 427, 429 [45 P.2d 183].) If, therefore, respondents' defense was properly before the trial court, the judgment would have to be sustained.

Appellant urges, however, that the judgment must be reversed because the trial court ignored the provisions of the Administrative and Education Codes and in direct contravention thereof the court permitted a defense which in the first instance should have been made by respondents at a hearing offered to appellant and conducted by the State Personnel Board; that the trial court found there was no contract, when on the same evidence the State Personnel Board could have found to the contrary, but that irrespective of how the board might have found, since respondents offered no such hearing to appellant and none was ever held as required by the applicable provisions of the Administrative and Education Codes heretofore cited, that the defense offered by respondents was in the wrong forum and that the findings and judgment of the trial court are a nullity. We agree.

The parties agree that the hiring of a teacher is governed by title 5 of the California Administrative Code, but disagree upon the construction of the pertinent sections. Section 42700(j) defines the term "appointment" and in August and September of 1971 provided: "(j) 'Appointment means the offer to and acceptance by a person of employment in a position in the State Colleges. Appointments may be temporary, probationary, or permanent. Appointments include various personnel actions such as initial appointments, reappointments (including reappointments which confer tenure or permanent status), promotions, transfers, demotions and reinstatements." Section 42702(d) provides that the president of each college or his designee shall make all appointments of academic employees.

■ The quoted letter of August 3 of the president of College was an offer. Appellant's letter of August 9 and subsequent conduct constituted an acceptance. Respondents seek to avoid the clear language of both letters with the argument that the consistent policy at College is that an appointment is complete only when the president of College signs the bottom lines of the Statement of Professional Qualifications and Preparation. Nothing

in the president's offer of appointment and nothing in the record suggests that this "consistent policy" was ever communicated to appellant. On these facts, the subjective intention of the president is wholly immaterial. (*Fowler v. Security-First Nat. Bank* (1956) 146 Cal.App.2d 37, 47 [303 P.2d 565].)

▉ Further, since the president's authority to appoint and the nature of appointment are defined by statute, the president cannot supplement, detract from or otherwise circumvent this grant of authority by enlarging, contracting or otherwise changing the terms of the statute from which he derives his power. (See *Short Stop, Inc.* v. *Fielder* (1971) 17 Cal.App.3d 435, 444 [95 Cal.Rptr. 102]; *California Sch. Employees Assn.* v. *Personnel Commission* (1970) 3 Cal.3d 139, 143-144 [89 Cal.Rptr. 620, 474 P.2d 436].)

Education Code section 24306 permits dismissal, demotion or suspension of a teacher for (c) "dishonesty"; (h) "fraud in securing appointment."
▉ Section 24308 requires "Notice of dismissal, demotion, or suspension for cause of an . . . employee shall be in writing, signed by the chancellor or his designee and be served on the employee, setting forth a statement of causes, the events or transactions upon which the causes are based, the nature of the penalty and the effective date, and a statement of the employee's right to answer within 20 days and request a hearing before the State Personnel Board."

Respondents made a unilateral judgment that the completed contract under which appellant had been appointed had been induced by dishonesty or fraud, ignoring the specific mandate of section 24308, that if the contract had been so induced, it could be avoided only by the procedure outlined in that section. Concededly it was not followed.

Respondents seek to fortify their position that a contract was not in fact made on the further ground that although it was not mentioned in the letter of the president or that of the vice chancellor of College that appellant's teaching duties did not commence until September 16, and since notice of non-hiring went forward on September 7, nine days before actual teaching duties commenced, they were justified in aborting its commencement. Appellant contends, and we believe correctly, that the appointment became effective on September 1, 1971.

If a contract was made, as we have found, it would be of no consequence when actual classroom work commenced, but it appears nevertheless to be clear that the contract did commence, as appellant contends, on September 1, 1971.

Section 42802 of the California Administrative Code provides in pertinent part: "42802. Effective Date of Initial Appointment. The effective

date of the initial appointment of an employee shall be as follows: (a) When the appointment is as an academic year employee who reports for duty at the beginning of a semester or quarter, the first day of the academic pay period during which the semester or quarter begins."

Section 42800 of that same code provides that the president shall fix the academic pay periods for academic employees of College. Attached to appellant's brief is a copy of the academic calendar for the years 1971-1972. It is not part of the record but its correctness is not denied.

Pursuant to Evidence Code sections 459 and 452, subdivision (h), we have taken judicial notice of the document[2] after having given respondents notice of our intention to do so pursuant to section 455 of the Evidence Code. (See generally Witkin, Cal. Evidence (2d ed. 1970) §§ 190, 191, pp. 171-172.)

The academic calendar indicates that the pay period for the month of September 1971 began on September 1, 1971. The fact that actual teaching did not begin until September 16, 1971, did not change the effective date of appellant's appointment, to wit: September 1, 1971. (§ 42802(a) of the Cal. Admin. Code.)

The procedure in respect of making a contract and invalidating a termination thereof is established in the California Administrative and Education Codes. It would appear that the time to check out the qualifications of a prospective employee is prior to the time a firm offer is made to the applicant, not after he has been hired. Appellant had been interviewed on July 23, 1971. The letter offering appellant the position was sent on August 3, 1971, to an address in Rochester, New York. Immediate acceptance followed and appellant presented himself at College during the latter part of August 1971. At that time he received his office keys, ordered necessary books and began to discuss the hiring of a secretary. Nine days before teaching was to start, in all probability too late for appellant to secure another position, College notified him that he would not be hired. This practice does not appear to the court to be fair to either prospective teachers or the state.

The judgment is reversed and the trial court is directed to issue a writ of mandate to the Board of Trustees of the California State Colleges; Glenn S. Dumke, chancellor, California State Colleges; Leo F. Cain, president, California State College, Dominguez Hills, and each of them, requiring ratification and restoration of petitioner Morris J. Starsky to

---

[2]Section 452, subdivision (f), provides that the court may take judicial notice of facts that are capable of immediate and accurate determination.

the employee roster of California State Colleges as an employee for the single academic year 1971-1972, in the department of philosophy of California State Colleges, Dominguez Hills, in accordance with contract dated August 21, 1971.

Fleming, J., and Compton, J., concurred.

A petition for a rehearing was denied October 18, 1973, and the judgment was modified to read as printed above. Respondents' petition for a hearing by the Supreme Court was denied November 15, 1973. Sullivan, J., did not participate therein.