[No. F005543. Fifth Dist. Mar. 6, 1987.]

RUSSELL BARRETT et al., Plaintiffs and Appellants, v.
STANISLAUS COUNTY EMPLOYEES RETIREMENT ASSOCIATION
et al., Defendants and Appellants.

**[Opinion certified for partial publication.*]**

*Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication
with the exception of parts III through VIII.

COUNSEL

Carroll, Burdick & McDonough, Christopher D. Burdick and Russell L. Richeda for Plaintiffs and Appellants.

Michael H. Krausnick, County Counsel, John F. Christensen, Assistant County Counsel, and Colleen D. Craig, Deputy County Counsel, for Defendants and Appellants.

OPINION

MARTIN, J.—Plaintiffs and defendants each appeal from an order of the Stanislaus County Superior Court striking return to peremptory writ of mandate filed February 12, 1985. The appeal and cross-appeal arise from plaintiff-employees' efforts to compel the defendant retirement board to reclassify them from "miscellaneous" status to "safety member" status under the Stanislaus County retirement plan.

FACTS

A. PRIOR APPEAL

Plaintiffs are 21 individuals employed by the sheriff's department of Stanislaus County as work program supervisors, head work program supervisors, and chief work program supervisor at the county honor farm. Persons in these job categories are classified as "miscellaneous" members of the Stanislaus County Employees Retirement Association.[1] In January 1980, plaintiffs demanded the defendants, Stanislaus County Employees Retirement Association (Association) and the Board of Retirement of the Association (Board), reclassify work program supervisors from "miscellaneous" to "safety" status and requested a hearing of such reclassification request. On February 15, 1980, the Board refused to reclassify respondents or to hold a hearing on reclassification.[2]

---

[1] Stanislaus County employees are covered by the provisions of the County Employees Retirement Law of 1937 (Gov. Code, § 31450 et seq.). Under this law, safety members are entitled to earlier eligiblity for retirement (Gov. Code, §§ 31662.4, 31671) and greater pension benefits than "miscellaneous" members. (See *Neeley* v. *Board of Retirement* (1974) 36 Cal.App.3d 815, 818 [111 Cal.Rptr. 841]; *Los Angeles County Fire Fighters* v. *Board of Retirement* (1975) 46 Cal.App.3d 762, 765 [120 Cal.Rptr. 478].)

[2] The Board's refusal apparently was based upon a memorandum from the county director of personnel, Phillip A. Rosenberg, which represented the status of work program supervisors as "miscellaneous" or "safety" members of the retirement Association was a subject of negotiations leading to a recently signed, three-year memorandum of understanding between the county and the plaintiffs' union. The personnel director wrote, "It is my opinion that a non-negotiated change would not be proper given our obligation to meet and confer . . . nor would it be prudent . . . from a labor relations standpoint."

Plaintiffs filed suit in Stanislaus County Superior Court seeking a writ of mandamus (Code Civ. Proc., § 1085 et seq.) and declaratory relief. The petition alleged in part: "The Respondents [the Association and Board] . . . are under a mandatory duty imposed upon them by the Retirement Act of 1937 to properly classify as either 'safety' or 'miscellaneous' all employees who are members of the Retirement Association, in accordance with their duties and responsibilities. In particular, Respondents . . . are under a mandatory duty to classify as 'safety members' any employee who is 'engaged in active law enforcement' because of his/her duties and responsibilities as either a 'jailer' or 'turnkey' employed by the County. Notwithstanding the plain duty imposed upon the Respondents . . . by law, and notwithstanding the demand of Petitioners [plaintiffs herein] that Respondents perform such duties, . . . Respondents . . . have wrongfully failed and refused, and will continue to fail and refuse, to reclassify your Petitioners from 'miscellaneous' to 'safety status' unless compelled by order of this Court to do so."

The petition requested: (1) a peremptory writ of mandamus directing defendants to reclassify plaintiffs from "miscellaneous" to "safety" status for all pension and retirement purposes, and to classify all future work program supervisors as "safety" members; (2) a declaration that all persons employed as work program supervisors are engaged in active law enforcement, perform the services of a "jailer" or "turnkey," and are entitled to "safety" status under the County Employees Retirement Law of 1937; and (3) a declaration that defendants are collaterally estopped from asserting in this action that work program supervisors are not "engaged in active law enforcement."[3]

The court overruled defendants' demurrer to the petition and denied their motion for summary judgment. Plaintiffs then moved for a peremptory writ of mandate and alternatively requested summary judgment as to the declaratory relief causes of action.

On June 23, 1981, the superior court granted plaintiffs' motion for peremptory writ of mandate as to the first cause of action and directed the defendant Board to reclassify the work program supervisors. In light of the decision to issue the peremptory writ, the court declined to rule on plaintiffs' motion for summary judgment as to the second and third causes of action for declaratory relief. After a hearing on defendants' objections to proposed findings, the court adopted the findings of fact and conclusions of law drafted by plaintiffs and entered judgment granting a peremptory writ of mandate.

---

[3]The last cause of action in the petition was based upon the final judgment in Nichols v. Stanislaus County Employees Retirement Association et al. (Super. Ct. Stanislaus County, No. 154793), in which Judge Hugh Rose III ruled plaintiff Nichols, also a work program supervisor, was " 'engaged in active law enforcement' " and therefore entitled to a service-related disability retirement.

Defendants appealed from this judgment and this court affirmed, stating in relevant part: "The affidavits submitted by [defendants] raised no substantial conflict regarding the duties of [plaintiffs] and the relationship of those duties to law enforcement. The uncontroverted facts establish [plaintiffs] were entitled to safety-member status." (*Barrett* v. *Stanislaus County Employees Retirement Association* (Sept. 30, 1983) 5 Civ. 6913 [F000348].)

## B. CURRENT APPEAL

On November 30, 1983, this court issued its remittitur in the instant case. On January 9, 1984, the Stanislaus County Superior Court filed a peremptory writ of mandate upon remittitur commanding the defendants to "reclassify the Petitioners ... and each of them, from 'miscellaneous membership' to 'safety membership' in the County's Retirement System, pursuant to Government Code §§ 31693.3 [*sic*] and 31470.2, retroactively to the initial date of employment of each Petitioner as a Work Program Supervisor with the Sheriff's Department, with retroactive credit for all such service as 'safety service', and prospectively so long as they remain so employed."

On March 29, 1984, defendants filed a return to peremptory writ of mandate stating: "At a public hearing convened on February 23, 1984, and continued to March 14, 1984, notice of which was given to each member and to counsel of record, the Board received factual information pertaining to each member as contained in the records on file in the office of the administrator of the Retirement Association and as presented by or on behalf of a member. The Board also received comments and arguments of counsel. The Board determined (1) that eligible persons not named as petitioners should be reclassified; (2) that Government Code section 31558 applies to each member and prevents the Board from extending safety member status to members who were over the age of 35 years when employed unless the member falls within an exception to that provision; (3) that an eligible member should not receive credit as a safety member for prior service as a Work Program Supervisor unless the member contributes the additional contributions, including contributions of interest, which the member would have made if he had been treated as a safety member from his initial date of service in that position; (4) that a person who has withdrawn from the retirement system should not be reclassified; and (5) that action should be taken upon certain questions presented as to particular members. In accordance with the action of the Board, on March 28, 1984, the Chairman of the Board executed a formal final order as to each of the members under consideration."

On May 21, 1984, plaintiffs moved to strike the return to peremptory writ of mandate or for order of further consideration. They maintained: (1) a

motion to strike the return under Code of Civil Procedure section 1097 was the appropriate means by which to raise the issues under consideration; (2) defendants failed to comply with the judgment and the writ insofar as reclassification of all plaintiffs was concerned; (3) defendants waived the right to raise the defense of Government Code section 31558 [time of becoming safety members, eligibility] by way of demurrer or answer; (4) Government Code section 31558 violated the equal protection clauses of the California and United States Constitutions; and (5) Government Code section 31558 violated the provisions of the California and federal Age Discrimination Acts (Gov. Code, § 12941; 29 U.S.C. § 621 et seq.); (6) defendant retirement Board had no statutory or common law power to demand "arrears contributions" for members who were misclassified through no fault of their own; and (7) defendant retirement Board was unentitled to any interest on contributions whatsoever.

On February 12, 1985, the Stanislaus County Superior Court filed a statement of decision and order striking return to peremptory writ of mandate. The court ordered the defendant retirement Association and defendant Board of retirement to file and serve a new return to the peremptory writ within 90 days. The court specifically ordered defendants "to file a Return indicating the [plaintiffs], and each of them, have all been reclassified from 'miscellaneous' to 'safety' status, retroactively to their initial date of employment with the Sheriff's Department of Stanislaus County without regard to their age at the date of said employment and without a demand or requirement that said [plaintiffs], or any of them, make any retroactive contributions in any amount to the Retirement Association as a pre-condition for such reclassification from 'miscellaneous' to 'safety.' "

The court granted plaintiffs' motion to strike the return, with the exception of the prayer for attorney fees, stating four reasons. First, defendants waived their right to claim for arrears contributions and to raise the issue of Government Code section 31558 by failing to present the relevant arguments to the trial court at the inception of the case or to the Court of Appeal. Second, Government Code section 31558 violated the "equal protection" provisions of the Fourteenth Amendment to the United States Constitution and article I, section 7, subdivision (a) of the California Constitution. The court noted the statute granted safety status regardless of age to the sheriff and undersheriff while withholding it from sheriff's personnel over the age of 35. The court concluded this was an unreasonable classification infringing on a fundamental interest and did not pass the "strict scrutiny test." Third, the court held Government Code section 31558 constituted an unlawful employment practice by discriminating in employment benefits on the basis of age in violation of state and federal law (Gov. Code, § 12941, subd. (a); 29 U.S.C. § 623, subd. (a)(1)). Finally, the court held the defendants had no legal authority, power, or ability under the County Employees Retirement Law

of 1937 (Gov. Code, § 31450 et seq.) to request arrears contributions of principal and/or interest in cases where the retirement Board erroneously misclassified employees. The court stated it would be unfair and inequitable to require the plaintiffs to make such repayments to the retirement Board, which was primarily responsible for the alleged arrearage through its own actions.

On April 10, 1985, defendants filed a notice of appeal from that part of the order striking return to peremptory writ of mandate requiring reclassification of work program supervisors without arrears contributions.

On April 11, 1985, defendants filed a second return to peremptory writ of mandate noting (1) defendants would reclassify plaintiffs as safety members of the Association without regard to their age at the date of employment by the County of Stanislaus and (2) defendants were appealing from that part of the order of the court precluding arrears contributions as a precondition of reclassification.

On April 19, 1985, plaintiffs filed a notice of cross-appeal from that portion of the order striking return to peremptory writ of mandate denying their request for attorney fees.[4]

DISCUSSION

## I. EMPLOYEE RETIREMENT CONTRIBUTIONS

Defendants contend the trial court erroneously ordered the Board to give plaintiffs retirement credit for prior service without a deposit of contributions.

---

[4]Every direction of a court or judge, made or entered in writing, and not included in a judgment, is denominated an order. (Code Civ. Proc., § 1003.) An order will not be appealable unless made so by a specific statutory provision. (*International Typographical Union etc. Pension Plan* v. *Ad Compositors, Inc.* (1983) 142 Cal.App.3d 733, 735 [191 Cal.Rptr. 227].) An order granting or denying a motion to strike out a pleading or a part thereof is nonappealable. (*Yandell* v. *City of Los Angeles* (1931) 214 Cal. 234 [4 P.2d 947] [striking out defendant's cross-complaint]; *Merchants Nat. Bank* v. *Clark-Parker Co.* (1929) 97 Cal.App. 757 [276 P. 387] [striking out defendant's counterclaim]; *Couch* v. *McGregor* (1937) 19 Cal.App.2d 633 [66 P.2d 159] [striking out demurrer and parts of answer]; 9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, § 83, pp. 105-106.) Where an order after an appealable judgment simply leaves the judgment intact and neither adds to nor subtracts from it, the order is not appealable. However, where the order relates to enforcement of a judgment, it is appealable. An order following hearing on adequacy of a respondent's return to peremptory writ of mandate is one relating to enforcement of a judgment and is therefore appealable. (*City of Carmel-by-the-Sea* v. *Board of Supervisors* (1982) 137 Cal.App.3d 964, 970-971 [187 Cal.Rptr. 379]; *Stoneham* v. *Rushen* (1984) 156 Cal.App.3d 302, 306, fn. 1 [203 Cal.Rptr. 20].)

Defendants' contentions are accurately summarized in their reply brief: "Admittedly, there is no statute which expressly applies to the situation presented by this case. There is no statute which grants Petitioners the right to deposit additional contributions in order to receive retirement credit for prior service. There is no statute which grants Petitioners the right to receive retirement credit for prior service without depositing contributions. Finally, there is no statute which expressly authorizes the Board to take action on retroactive contributions in this particular situation. Thus, if authority exists to deal with credit for past service and with contributions, such authority must be implied. Without implied authority to deposit contributions, Petitioners have no right to receive retirement credit for prior safety member service. (*Davis* v. *Board of Administration* (1985) 164 Cal.App.3d 1026 . . . .)

"If Petitioners do have an implied right to deposit contributions, they must also find an implied right to require the County to make the deposit for them. The trial court erroneously determined that the Board had to have authority to condition credit for past safety service on deposit of contributions. The 1937 Law is, however, funded by both member contributions and employer contributions with no requirement that the employer pay the member's share. It is the Petitioners who are seeking the exercise of authority within the provisions of the 1937 Law. It is not enough for Petitioners to state that the Board lacks authority for its action, it must be shown that the Board has authority under the 1937 Law to take the action ordered by the trial court."

The County Employees Retirement Law of 1937 (Gov. Code, § 31450 et seq.) was enacted "to recognize a public obligation to county and district employees who become incapacitated by age or long service in public employment and its accompanying physical disabilities by making provision for retirement compensation and death benefit as additional elements of compensation for future services and to provide the means by which employees who become incapacitated may be replaced by more capable employees to the betterment of the public service without prejudice and without inflicting a hardship upon the employees removed." (Gov. Code, § 31451.)

The board of supervisors shall prescribe the compensation of all county officers and shall provide for the number, compensation, tenure, appointment and conditions of employment of county employees. (Gov. Code, § 25300; Cal. Const., art. XI, § 1, subd. (b).) ■ Compensation for official services depends entirely upon the law. Statutes relating to such compensation are strictly construed in favor of the government. A public officer may only collect and retain such compensation as is specifically provided by law and any money paid by a governmental agency without authority of law may be recovered from such officer. (*County of San Diego* v. *Milotz* (1956) 46

Cal.2d 761, 767 [300 P.2d 1].) ■ Public employee pensions are based upon the theory such a pension is an integral part of the employee's compensation under his contract of employment, and that one of the primary purposes of offering a pension, as additional compensation, is to induce competent persons to enter and remain in public service. (*Packer* v. *Board of Retirement* (1950) 35 Cal.2d 212, 215 [217 P.2d 660].) Under a well-established rule, pension legislation should be liberally construed, resolving all ambiguities in favor of the applicant. However, this rule of liberal construction is applied for the purpose of effectuating obvious legislative intent and should not blindly be followed so as to eradicate the clear language and purpose of the statute and allow eligibility for those for whom it was obviously not intended. (*Neeley* v. *Board of Retirement* (1974) 36 Cal.App.3d 815, 822-823 [111 Cal.Rptr. 841].)

Defendants devote a substantial portion of their opening brief to questioning whether "... there is implied authority to allow [plaintiffs] to obtain safety member retirement for their prior service ...." This discussion is unnecessary in light of the doctrine of the law of the case. ■ The Supreme Court has stated: " 'The doctrine of the law of the case is this: That where, upon an appeal, the supreme court, in deciding the appeal, states in its opinion a principle or rule of law necessary to the decision, that principle or rule becomes the law of the case and must be adhered to throughout its subsequent progress, both in the lower court and upon subsequent appeal, and, as here assumed, in any subsequent suit for the same cause of action, and this although in its subsequent consideration this court may be clearly of the opinion that the former decision is erroneous in that particular.' " (*People* v. *Shuey* (1975) 13 Cal.3d 835, 841 [120 Cal.Rptr. 83, 533 P.2d 211]; quoting *Tally* v. *Ganahl* (1907) 151 Cal. 418, 421 [90 P. 1049].)

The principle applies to criminal as well as civil matters and to decisions of intermediate appellate courts as well as courts of last resort. (*Clemente* v. *State of California* (1985) 40 Cal.3d 202, 211 [219 Cal.Rptr. 445, 707 P.2d 818].) In the prior appeal, this court upheld the superior court judgment ordering "[a] Peremptory Writ of Mandate issue out under the seal of this Court ordering and compelling the [defendants], and each of them, and their agents, officers, employees, and other persons acting in concert with them, to reclassify the [plaintiffs], and each of them, as 'safety members' of the County's Retirement System, retroactively to the date of their initial employment with the Sheriff's Department as Work Program Supervisors, with full credit for 'safety service' from the date of such initial employment, and for 'safety membership' in the future so long as they shall remain so employed."

This statement constitutes the law of the case. Thus, defendants' repetitious questioning of the propriety of retroactive reclassification is barred in the instant appeal. That issue is no longer before us. However, defendants

question whether the Board has authority to allow a member to deposit additional contributions needed to fund the additional retirement benefits. This issue was not previously before us and is properly raised in this appeal.

After substantial discussion, defendants concede they can imply "authority *to allow* the member and the County to deposit additional contributions" from Government Code section 31470.8.[5]

Finally, and most importantly, defendants contend: "There is no authority, either express or implied, for the board to grant [plaintiffs] higher retirement benefits for safety service without requiring them to deposit the corresponding additional contributions. The trial court decision ordering the Board to give [plaintiffs] retirement credit without deposit of contributions is erroneous as a matter of law and should be reversed."

In striking the defendants' return to writ of mandate, the lower court stated: "Neither at trial nor on appeal did the [defendants] ever raise the issue of ... the claim for arrears contributions, and it was their duty to present these arguments to the trial court at the inception of the case, or, at the very least, to the Court of Appeals [*sic*] on appeal; and the [defendants] have thereby waived said claims, issues, and contentions ...."

██ The plaintiffs contend substantial evidence clearly supports the trial court's conclusion that "after five years of litigation and one prior appeal, the [defendants] had waived their right to demand arrears contributions of the [plaintiffs]." Plaintiffs note the defendants demurred to their original petition in the first proceeding but their demurrer, their declarations and points and authorities opposing the motion for peremptory writ, and all their posttrial pleadings failed to address the challenged issue. Similarly, defendants failed to inform this court and the plaintiffs that arrears contributions would be an issue. Only upon the issuance of the peremptory writ upon remittitur from this court did defendants raise the issue for the first time. Plaintiffs note in the interim, "four years had passed and the [plaintiffs] had expended thousands and thousands of their own dollars pursuing this case, an expenditure from persons of moderate means (including one widow) which would be completely overwhelmed (as would be the recalculated pensions) by the repayment requirement ...."

In view of these facts and circumstances, plaintiffs maintain the lower court was entitled to find defendants had waived the arrears contributions contention and its decision in that regard should not be overturned.

---

[5] Government Code section 31470.8 states: "In cases of doubt as to whether a person is eligible to become a safety member, the board shall decide."

Defendants contend they did not waive the arrears contributions issue because they had no present duty to consider the issue *prior* to the resolution of the eligibility question by the courts. They maintain: "At the time [plaintiffs] applied for a writ to compel the Board to classify them as safety members, the Board had no present duty to decide or consider the arrears contribution issue. The [plaintiffs] did not request the Board to decide such issue either before or after their petition was filed. Because the [plaintiffs] did not yet have safety member status, the Board had no present duty to consider the issue of arrears contributions, even if [plaintiffs] had raised it."

Defendants argue since plaintiffs initially sought to compel the Board to reclassify them as safety members, plaintiffs had the burden of pleading and proving all aspects of their claim for relief and should bear any sanction for failure to raise the issue of arrears contributions. Defendants did not "waive" the issue of arrears contributions by nonaction because they had no present duty to consider the issue at anytime before the issue of eligibility was decided by the courts.

Defendants' position is well taken. The assertion of an arrears contributions obligation would not have barred plaintiffs from reclassification as safety members. Plaintiffs narrowly drew their petition for writ of mandate and simply sought a reclassification from "miscellaneous" to "safety" status for all pension and retirement purposes. Plaintiffs could have expanded their petition to seek county funding of arrears contributions and, thus, apprise defendants of the total relief sought to which defendants, of necessity, would have responded. However, plaintiffs would have borne the burden of proof as to that issue. (Evid. Code, § 500.) Nor did defendants' requirement of arrears contributions constitute a change in the theory on which the case was tried. Rather, the arrears question requires the interpretation and application of existing law to determine the liability for arrears contributions, an issue not raised or addressed by plaintiffs in the initial proceeding or prior appeal. We conclude the trial court erroneously ruled defendants waived the issue of arrears contributions by failing to raise it in the prior appeal and prior superior court proceedings.

■ Thus, we must consider the merits of defendants' contentions. Defendants contend: "In order to respond to the request of the [plaintiffs] for free retirement credit, the Board must have the authority to require the county to deposit both the member share and the county share of the higher safety member contributions. While authority *to allow* the member and the county to deposit additional contributions can be implied, there is no basis for an implication of authority *to require* either the member or the county to pay the [other's] normal safety member contribution. The Board contends it has no express or implied authority to require the county to deposit all or part of a member's normal contribution. It can decide a member is

eligible, but it cannot alter the statutory requirement that the additional benefits of eligibility be funded by the contributions of both the member and the County. Since statutes expressly require both the member and the county to contribute normal contributions, it cannot be implied that either is obligated to contribute for the other."

Plaintiffs contend: "Here, the record is clear that the trial court weighed the equities between the parties with a particular emphasis on their economic positions .... In addition to the relative financial disparity between the parties, the court was also, of course, cognizant of the fact that the Retirement Board had never raised the issue in the litigation until the very end. There existed, therefore, substantial evidence to support the Trial Court's invocation of equitable estoppel.

". . . All the requisite factual showings had been made, and the Retirement Board made absolutely no showing (notwithstanding the trial court's invitation that it do so . . .) of any adverse financial impact upon the Retirement Association or of the violation of any public policy. Instead, [defendants] chose to characterize reclassification without repayment as a 'windfall' while ignoring the drastic financial impact on some [plaintiffs] of having to repay over 20 years of contributions (including interest) over a relatively brief period of time. No abuse of the trial court's discretion having been shown, this Court should not overturn the sound, reasoned decision of the trial court in that regard."

Plaintiffs rely on *Crumpler* v. *Board of Administration* (1973) 32 Cal.App.3d 567 [108 Cal.Rptr. 293] in support of their argument. In *Crumpler,* the San Bernardino Police Department hired petitioners as animal control officers. As city employees they became contract members of the Public Employees Retirement System (PERS). At the time of employment, each petitioner was classified under PERS as a local safety member. Years later the PERS executive officer determined petitioners had been erroneously classified as local safety members and reclassified them into miscellaneous membership. Following an administrative hearing on the issue of classification, the respondent PERS board determined the PERS officer properly reclassified them as miscellaneous members as of the dates they initially became members of the system. The San Bernardino County Superior Court granted a peremptory writ of mandate commanding the PERS board to reinstate petitioners to the classification of local safety members and to treat them as such from the date each became a member of the system. The Fourth District Court of Appeal concluded the PERS board was estopped from reclassifying petitioners for the period of membership prior to the board's decision but was not so estopped from reclassifying petitioners to miscellaneous membership prospectively from the date of the decision.

To invoke equitable estoppel (1) the party to be estopped must be apprised of the facts; (2) he must intend his conduct shall be acted upon, or must so act that the party asserting the estoppel had a right to believe it was so intended; (3) the other party must be ignorant of the true state of facts; and (4) he must rely upon the conduct to his injury. The doctrine of equitable estoppel may be applied against the government where justice and right require it, but an estoppel will not be applied against the government if to do so would effectively nullify a strong rule of policy, adopted for the benefit of the public. All of the requisite elements of equitable estoppel were present in *Crumpler.* The City of San Bernardino was apprised of the facts. The city knew petitioners were being employed by the police department as animal control officers at the time it erroneously advised them they would be entitled to retirement benefits as local safety members. The fact the advice was given in good faith did not preclude the application of estoppel. The city manifestly intended its erroneous representations to be acted upon and petitioners had a right to believe the city so intended. Petitioners were ignorant of the fact the city's advice was erroneous. Petitioners relied upon the representations to their injury by relinquishing other employment to accept city employment and by paying the greater contributions required of safety members over the years.

The Fourth District Court of Appeal concluded the board was estopped from reclassifying the petitioners as of the date of their initial membership in the system. However, the court declined to extend estoppel to preclude the board from reclassifying petitioners prospectively from the date of the board's decision. It concluded public interest and policy would be adversely affected if petitioners, despite the discovery of the mistake in classification, were required to be carried as local safety members when all other contract members of the retirement system throughout the state performing similar duties and functions were classified as miscellaneous members. Such an extension of estoppel would have had a disruptive effect on the administration of the retirement system. Petitioners contended the board was forever precluded from reclassifying them because they had a vested right to be classified as local public safety members. The court held petitioners' contention devoid of merit. Upon acceptance of public employment, provisions of the applicable pension law become an integral part of the contract of employment. Any modifications affecting earned pension rights of active employees must be reasonable, related to the theory of a sound pension system, and any changes detrimental to the individual must be offset by comparable new advantages. However, correction of an erroneous classification cannot be equated to a modification or alteration of earned pension rights. The Public Employees' Retirement Law (Gov. Code, § 20000 et seq.) expressly provided for correction of errors such as occurred in *Crumpler.* (Gov. Code, § 20180.) Since the provisions of the corrective statute were as much a part of the contract of employment as other provisions of the retirement law, an exercise

of the corrective power involved no violation or impairment of petitioners' contractual or vested rights.

In our view, the instant case is distinguishable from *Crumpler.* The Legislature has not enacted a corrective statute analogous to Government Code section 20180 as part of the County Employees Retirement Law of 1937. Moreover, *Crumpler* is factually distinguishable from the instant case. In *Crumpler,* the Fourth District held the PERS board equitably estopped from retroactively reclassifying the animal control officers where the latter paid the greater contributions required of safety members over the years. Thus, the animal control officers were offered the benefit of their bargain. They received what they had bargained and paid for. In the instant case, the defendants retroactively reclassified plaintiffs as safety members but have conditioned their higher pension benefits on the deposit of their share of arrears contributions plus applicable interest. Plaintiffs have been deprived of nothing for which they bargained. Rather, they have merely been required, by defendants, to pay their quid pro quo. They will receive the higher pension benefits retroactively but are required, as are all other safety members, to pay retirement contributions commensurate with the formula contributions paid by all other safety members during the entire course of their employment.[6]

Plaintiffs nevertheless maintain equitable considerations bar defendants from demanding arrears contributions. ██ A fundamental maxim of jurisprudence is that equity must follow the law. (*Starsky* v. *Board of Trustees* (1973) 34 Cal.App.3d 310, 312 [109 Cal.Rptr. 822].) Equity is bound by rules of law; it is not above the law and cannot controvert the law. (*Culbertson* v. *Cizek* (1964) 225 Cal.App.2d 451, 463 [37 Cal.Rptr. 548].) Equity penetrates beyond the form to the substance of a controversy, but is nonetheless bound by the prescriptions and requirements of the law. (*Elbert, Ltd.* v. *Federated etc. Properties* (1953) 120 Cal.App.2d 194, 200 [261 P.2d 743].) While equitable relief is flexible and expanding, its power cannot be intruded in matters that are plain and fully covered by positive statute. A court of equity will not lend its aid to accomplish by indirect action what the law or its clearly defined policy forbids to be done directly. (*Marsh* v. *Edelstein* (1970) 9 Cal.App.3d 132, 140-141 [88 Cal.Rptr. 26].)

As noted above, pension legislation should be liberally construed, resolving all ambiguities in favor of the applicant. However, this rule of liberal construction is applied for the purpose of effectuating the *obvious legislative intent* and should not blindly be followed so as to eradicate the

---

[6]Defendant stipulated at oral argument any arrears contributions found owing by plaintiffs would date from January 1, 1971, and no arrears contributions were being sought for pre-1971 service to obtain safety member retirement benefits.

clear language and purpose of the statute and allow eligibility for those for whom it was obviously not intended. We have concluded the plaintiff work program supervisors are eligible for safety member retirement status under the County Employees Retirement Law of 1937. The sole question remaining is the funding of their retroactive benefits as safety members. A review of the entire statutory scheme reveals a retirement system based on contributions by both employer and employee. (Gov. Code, §§ 31453, 31453.5, 31558-31567, 31581.) Thus, imposition of an arrears contributions obligation on plaintiffs would place them in the position they would have been had they been properly classified from the date of their employment. Plaintiffs contend such an obligation would result in a "drastic financial impact" because they would have to pay up to 20 years of contributions including interest over a relatively brief period of time. Plaintiffs infer they will have to bear the entire burden of arrears contributions. However, in light of the statutory scheme, the County of Stanislaus would also be required to contribute its share of retroactive contributions to fund the plaintiffs' retirement as safety members.

■ With respect to active employees, any modification of vested pension rights must be reasonable, must bear a material relation to the theory and successful operation of a pension system, and, when resulting in disadvantages to employees, must be accomplished by comparable new advantages. (*Allen* v. *Board of Administration* (1983) 34 Cal.3d 114, 120 [192 Cal.Rptr. 762, 665 P.2d 534], app. dism. 465 U.S. 1015 [79 L.Ed.2d 669, 104 S.Ct. 1262].) The instant case entails an enhancement rather than a modification of vested pension rights. Moreover, here any disadvantage to the employees is definitely accompanied by comparable new advantages in the form of increased pension benefits.

Further, imposition of an arrears contributions obligation does not summarily foreclose plaintiffs from obtaining the higher benefits. As the defendants properly note, the Legislature has enacted several statutes which authorize a county board of supervisors to deposit some or all of the member's normal contributions for the benefit of the member. (See Gov. Code, §§ 31581.1 [board of supervisors may elect to pay up to one-half of the contributions normally required of members for any period of time designated in the resolution providing for such payment]; 31581.2 [board of supervisors may, on recommendation of board of retirement, agree to pay any portion of the contributions required to be paid by a member]; 31639.85 [board of supervisors may, on recommendation of board of retirement, agree to pay any portion of safety members' normal contributions to the system]; 31648 [governing body by four-fifths vote, may make all or part of arrears contributions for officers and employees subsequently included in field of membership].) In addition, plaintiffs may also seek low interest or no interest

loans from the county or private sources to make the necessary deposits to obtain higher retirement benefits.

The record does not reveal whether plaintiffs applied to the board of supervisors for funding of their share of arrears contributions. This avenue of relief will still be available to the plaintiffs upon remand. Thus, we conclude the trial court erroneously ordered defendants to pay all of the arrears contributions on behalf of plaintiffs and this aspect of the order striking return to writ of mandate must be reversed.

 Plaintiff employees further contend even if the Board was entitled to demand arrears contributions of principal sums from and after January 1, 1971, it could not properly require plaintiffs to pay interest or compound interest on such arrears.

In their return to the peremptory writ of mandate, the Board required arrears contributions of plaintiffs in "an amount equal to the contributions he [the employee] would have made to the retirement fund if he had been making Safety Member contributions during the time for which he has elected to receive credits, computed by applying the contribution rate first applicable to him upon becoming a Safety Member to the aggregate compensation he actually received during the time he was a Safety Member and for which he has elected to receive credit, together with interest at the appropriate rate on that amount from the time he became a Safety Member until completion of payment."

As previously noted, we need consider arrears contributions only from and after January 1, 1971, and thus, interest owing, if any, only from and after that date.

The superior court provided in its February 12, 1985, statement of decision: "There is no legal authority, power, or ability vested in the Retirement Board and the Retirement Association under the Retirement Act of 1937 (Gov. Code, § 31450 et seq.), which allows the Retirement Board to request arrears contributions (either of interest or principal, simple or compound) in cases where the Retirement Board has erroneously misclassified employees, particularly where, as here, said misclassification has been performed over the repeated objections and complaint of the employees in question: in this case, it would be unfair and inequitable to require the petitioners (many of whom are of long tenure with the County) to make such repayments to the Retirement Board, which is primarily responsible for the alleged arrearage, through its own actions."

We have rejected the trial court's conclusion that plaintiffs could not or should not be required to make post-January 1, 1971, arrears contributions.

In view of that conclusion, must the trial court's proscription of assessment of interest on arrears contributions also fail?

For investment purposes, a retirement fund under the County Employees Retirement Law of 1937 is invested as a whole; the contributions of the county and the members are not invested separately. (Gov. Code, §§ 31594, 31595; 11 Ops.Cal.Atty.Gen. 31 (1948).) "Regular interest" means interest at 2½ percent a year compounded semiannually on June 30 and December 31 until otherwise determined by the board of retirement. (Gov. Code, § 31472.) Government Code section 31591 states: "Regular interest shall be credited semiannually on June 30th and December 31st to all contributions in the retirement fund which have been on deposit for six months immediately prior to such date. Interest at the rate of 2½ percent per annum, unless otherwise determined by the Board, compounded semiannually, shall be used in the calculation of benefits under any mortality table adopted by the board of supervisors. No interest shall be credited to a member's account after the membership of such member in the retirement association has ceased, unless the member has elected, in writing, to leave his accumulated contributions in the retirement fund and be granted a deferred retirement allowance, or the surviving spouse of the deceased member or the legally appointed guardian of the member's unmarried children under age 18 has elected to leave a death benefit on deposit as provided for in Section 31781.2."

"Regular interest" or "interest" when used for purposes of computing deposits under the County Employees Retirement Law of 1937, except as otherwise specifically provided, means that amount of interest which would have been credited to the account of the member on the amount to be deposited at the interest rates established for the system if the contributions required to be deposited have been made in the amounts and at the times required if the member had been making such deposits during the time service was rendered until the amount required to be deposited has been paid. (Gov. Code, § 31472.1.)

Upon retirement for service, a member is entitled to receive a retirement allowance which shall consist of (a) a service retirement annuity; (b) a current service pension; and (c) a prior service pension. (Gov. Code, § 31673.) The service retirement annuity is an annuity which is the actuarial equivalent of the member's accumulated contributions at the time of his or her retirement. (Gov. Code, § 31674.)[7] Upon the retirement of a member, a county

---

[7]"Accumulated contributions" means accumulated normal contributions plus any accumulated additional contributions standing to the credit of a member's account. (Gov. Code, § 31467.) "Accumulated normal contributions" means the sum of all normal contributions standing to the credit of a member's individual account and regular interest thereon. (Gov. Code, § 31464.) "Accumulated additional contributions" means the sum of all additional contributions standing to the credit of a member's individual account and regular interest thereon. (Gov. Code, § 31466.)

must match the interest which has been credited upon the member's contributions as well as the contributions themselves.

The defendant Association and Board maintain in the instant case: "Interest on contributions is itself a contribution used to support the benefits paid by the system or returned to the contributor. It logically follows the term 'contributions' includes contributions of interest. When the deposit of contributions has been specifically authorized by statute, the amount to be deposited invariably includes interest contributions. [Citations omitted.] The term 'regular interest' or 'interest' as used in these sections for the purpose of computing deposits means the amount of interest which would have been credited to the member's account if the member had been making deposits during the time the service was rendered. ([Gov. Code, §] 31472.1.) If the member is to deposit the amount of contributions he would have deposited he must deposit the interest he would have earned. Contributions of interest earned are indistinguishable from contributions of salary."

A review of the entire statutory scheme reveals a retirement system based upon contributions by both employer and employee (Gov. Code, §§ 31453, 31453.5, 31558-31567, 31581) and the crediting of interest on contributions by both employer and employee. Thus, imposition of an arrears contributions obligation, with regular interest thereon, would place plaintiffs in the position they would have been in had they been properly classified from January 1, 1971, the effective date of the safety member retirement program in Stanislaus County. Plaintiffs contend such an obligation would result in a "drastic financial impact" on them because they would have to pay up to 15 years of contributions, including interest, over a relatively brief period of time. Again, plaintiffs assume they will have to bear the entire burden of the arrears contributions with regular interest thereon. Under the statutory scheme, the County of Stanislaus would also be required to contribute its share of normal contributions, with regular interest thereon, to fund the plaintiffs' retirement as safety members. Thus, both employer and employee will be required to contribute interest calculable under Government Code section 31472.1.

We therefore conclude the defendants Association and Board may properly require plaintiff employees to pay regular interest on their arrears contributions to obtain increased retirement benefits as safety members, and the order striking return to writ of mandate must also be reversed in this regard.

## II. Did the Trial Court Erroneously Substitute Its Discretion for That of the Board?

Defendants contend the trial court erroneously substituted its discretion for that of the Board by ordering the Board to give plaintiffs retroactive credit for prior safety service.

Plaintiffs argue: "Under the 1937 Law, contributions by members of the system is an obligation of membership. A change from miscellaneous to safety status presents questions as to safety member contributions, prospective and retroactive, which must be decided. Accordingly, after [plaintiffs'] safety member status was recognized, the Board then had a duty to decide such issues. Unless the Board was required by law to reach a particular result, the Board, as the body charged with management of the retirement system, had to decide the question of prospective and retroactive contributions in the exercise of its discretion.

"The [court's statement of decision] ... shows on its face that the trial court substituted its discretion for that of the Board when it decided that it would be unfair and inequitable to require [plaintiffs] to make the arrears contributions. The Board had decided just the opposite—that it would be fair and proper for the administration of the retirement fund to allow [plaintiffs] retroactive retirement credit only after contribution of arrears contributions."

Defendants properly note if there is discretion to act in one way or another, in addition to a duty to act, mandamus will not issue because it cannot be used to compel the doing of an act in a particular manner except when (1) the act is performance of a ministerial duty or (2) when the discretion to act can be legally exercised in only one way, in which event the failure to so act is an abuse of discretion. The burden is on the petitioner to show the duty sought to be enforced does not entail judgment or discretion. (Cal. Civil Writs (Cont.Ed.Bar 1970) § 529, p. 83.) As to current contributions, defendants maintain the Board proceeded, without objection, as if its discretion to act could be legally exercised only one way—to require member contributions. As to retroactive contributions, the Board proceeded as if it had discretion to act in one way or another. Although the Board found no statute authorizing waiver of contributions by either the member or the county, the Board, in an exercise of discretion, considered it would be unfair to excuse plaintiffs from depositing what other safety members had been required to deposit.

A writ of mandate is not a writ of right to be freely issued whenever a court disagrees with the policy of administrative action. It is limited to compel the performance of an act which the law specially enjoins, as a duty resulting from an office, trust or station. (Code Civ. Proc., § 1085 et seq.) When a statute imposes upon an administrative body discretion to act under certain circumstances, mandate will not lie to compel the exercise of such discretion in a particular manner. (*Hunt* v. *Board of Chiropractic Examiners* (1948) 87 Cal.App.2d 98, 101 [196 P.2d 77].) Here, the trial court ordered defendant Board to pay all arrears contributions and applicable interest on behalf of the newly classified safety members. In so doing, the court errone-

ously attempted to compel the Board to exercise its discretion in a particular manner and reversal is required.[8]

### III.–VIII.*

. . . . . . . . . . . . . . . . . . . . . .

We reverse the order striking return to peremptory writ of mandate as to the arrears contributions issue and remand for further proceedings consistent with the views expressed herein. We affirm the order striking return to peremptory writ of mandate in all other respects. Each side to bear their respective costs on appeal.

Franson, Acting P. J., and Woolpert, J., concurred.

---

[8]Defendants also contend the trial court erred in basing its decision on an assumption not supported by evidence. The court assumed in its tentative ruling the county can afford the arrears contributions better than the individual plaintiffs. The trial court cites nothing to support its assumption and even recognized no such evidence had been presented. The trial court cannot assume facts for its decision. (*Cothran* v. *Town Council* (1962) 209 Cal.App.2d 647, 664 [26 Cal.Rptr. 319].)
 *See footnote on page 1593, *ante.*