Filed 9/22/21  Pope v. Even St. Productions CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FIVE

| | |
|---|---|
| VIRGINIA POPE,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>EVEN ST. PRODUCTIONS, LTD. et al.,<br><br>    Defendants and Respondents. | B275199<br><br>(Los Angeles County Super. Ct. No. BC430809) |
| MAJOKEN INC.,<br><br>    Cross-Complainant and Appellant,<br><br>    v.<br><br>EVEN ST. PRODUCTIONS, LTD. et al.<br><br>    Cross-defendants and Respondents. | |

EVEN ST. PRODUCTIONS, LTD. et al.,

      Cross-complainants and Appellants,

      v.

VIRGINIA POPE et al.,

      Cross-defendants and Respondents.

APPEALS from orders and a judgment of the Superior Court of Los Angeles County, Mark V. Mooney, Judge. Affirmed in part, reversed in part, and remanded with directions.

Spillane Trial Group, Jay M. Spillane, for Virginia Pope and Majoken Inc.

Klapach & Klapach, Joseph S. Klapach; Kozberg & Bodell, Gregory Bodell, for Gerald Goldstein and Glenn Stone.

Ervin Cohen & Jessup, David N. Tarlow, for Even St. Productions, Ltd. and Majoken, Inc.

The procedural posture of these consolidated appeals needs summarizing. Plaintiff Virginia Pope (Pope), as successor in interest to now-deceased musician manager Ken Roberts (Roberts), appeals from a trial court order summarily adjudicating a cause of action for conversion in favor of defendants Even St. Productions Ltd., Gerald Goldstein, Glenn Stone, and Majoken, Inc. (the "Even St. Parties"). Cross-complainant Majoken Inc. ("Roberts Majoken"), represented on appeal by the same attorney who represents Pope, appeals from a judgment after bench trial finding in favor of the Even St. Parties on, as relevant here, causes of action for constructive fraud and a common law claim for money had and received. Finally, the Even St. Parties, as cross-complainants, cross-appeal from a summary adjudication order declaring Roberts to be the rightful owner of royalty payments made by Broadcast Music Inc. (BMI) from 1976 through 2009 for public performances by Sylvester Stewart (Stewart), popularly known as "Sly" of Sly and the Family Stone.

The parties are familiar with the facts, and our opinion does not meet the criteria for publication. (Cal. Rules of Court, rule 8.1105(c).) We accordingly resolve the cause before us, consistent with constitutional requirements, via an opinion with reasons stated. (Cal. Const., art. VI, § 14; *Lewis v. Superior Court* (1999) 19 Cal.4th 1232, 1261-1264 [three-paragraph discussion of issue on appeal satisfies constitutional requirement because "an opinion is not a brief in reply to counsel's arguments"; "[i]n order to state the reasons, grounds, or principles upon which a decision is based, [an appellate court] need not discuss every case or fact raised by counsel in support of the parties' positions"].)

3

         \*      \*      \*

1.  We begin with the Even St. Parties cross-appeal.  We agree it was error for the trial court to summarily adjudicate the declaratory relief claim in Pope's favor (in her capacity as successor to Roberts) because the record before the court reveals a material dispute of fact requiring trial on the question of who is entitled to the royalty payments in question during the pertinent time period.

The document signed by Stewart and Roberts that was sent to BMI in 1976 (the 1976 Assignment) does state Stewart "unconditionally, irrevocably and absolutely assigns to Ken Roberts and/or Ken Roberts Enterprises, Inc. as the Assignee and/or Judgment Creditor of Sylvester Stewart . . . any and all payments . . . to be made by [BMI] to the undersigned Sylvester Stewart pursuant to the terms of the undersigned's existing agreement with BMI . . . ."  In isolation, the modifier "irrevocably" in this sentence could be read to mean the assignment was not revocable in perpetuity—but that is not the only possible meaning.  Rather, when understood in context of the document's own characterization of Stewart as a judgment creditor and Roberts's later sworn declaration that the assignment was given "as security for the payment of loans previously made to [him]", the 1976 Assignment is ambiguous about the duration in which it would be irrevocable—namely, in perpetuity or only until Stewart's existing debt to Roberts was repaid.[1]  Trial of the declaratory relief cause of action is

---

[1]    The ambiguity, the existence of which is partly shown by Roberts's 2010 declaration, would not have fully appeared to this court in 2013 when deciding an appeal from a demurrer in a related appeal—in which this court was obligated to take the

4

accordingly necessary to decide that issue, i.e., whether Stewart or Roberts held the contractual right to royalty payments at the time of Stewart's (purported) assignment of those rights to the Even St. Parties in 1989.

2. Turning to Pope's appeal, she believes the trial court erred in concluding there was no material dispute of fact requiring trial on Roberts's conversion cause of action against the Even St. Parties. The trial court's ruling, however, is correct.

"""Conversion is the wrongful exercise of dominion over the property of another. The elements of a conversion claim are: (1) the plaintiff's ownership or right to possession of the property; (2) the defendant's conversion by a wrongful act or disposition of property rights; and (3) damages . . . .""" (*IIG Wireless, Inc. v. Yi* (2018) 22 Cal.App.5th 630, 650.) The Roberts conversion claim founders on the first of these elements. Roberts did not *own* the rights for the Sly Stone musical performances in question or the royalties BMI collected as the *owner* of those rights. Instead, Roberts had a contractual right to payment of royalties (at least for some period of time) that derived from Stewart's original decision to grant to BMI "[a]ll the rights that [he] own[ed]" and the 1976 Assignment from Stewart to Roberts. Roberts therefore lacked the ownership interest in property that a conversion claim requires. (See, e.g., *Rutherford Holdings, LLC v. Plaza Del Rey* (2014) 223 Cal.App.4th 221, 233 ["'[A] mere contractual right of payment, without more, will not suffice' to support a claim for conversion"]; see also *PCO, Inc. v. Christensen, Miller, Fink,*

---

facts of the operative complaint as true without considering extrinsic evidence of a latent ambiguity (see generally *Dore v. Arnold Worldwide, Inc.* (2006) 39 Cal.4th 384, 391).

5

*Jacobs, Glaser, Weil & Shapiro, LLP* (2007) 150 Cal.App.4th 384, 395 ["A 'generalized claim for money [is] not actionable as conversion'"]; *Rodgers v. Roulette Records, Inc.* (S.D.N.Y. 1988) 677 F.Supp. 731, 737 ["When royalties are due pursuant to a contractual relationship, whether express or implied, plaintiff cannot recover on a theory of conversion without establishing more"].)

Pope believes the conversion cause of action was viable because there was no contract between Roberts and the Even St. Parties whereas the contract between Stewart and BMI established BMI had "a perfect, indeed superior, right to possess performance royalties" as compared to Roberts. Even if true, the distinction does not matter. The only right to royalty payments that Roberts had (at least for a time) was a right wholly derivative of Stewart's; once Stewart exchanged his ownership rights for a contractual right to payment, such a right to payment is all Roberts could ever have and is insufficient to state a claim for conversion. Pope also asserts the Even St. Parties "employed a fraudulent scheme to steal the royalties" that should have entitled Roberts to an equitable lien or made the Even St. Parties an involuntary trustee. But equitable liens or involuntary trusts are merely remedies, and remedies depend on the existence of a viable cause of action—which is lacking here for the reasons already given. A conversion claim is not made viable by merely presupposing fraud and usurpation of damages from that fraud.

3. Roberts Majoken, but not Roberts himself, cross-complained against the Even St. Parties. The operative cross-complaint was filed just days after the trial court summarily adjudicated Roberts's conversion claim in favor of the Even St. Parties. As relevant for our purposes, the operative cross-

6

complaint alleges causes of action for constructive fraud and money had and received.  The trial court entered judgment for the Even St. Parties on both.  That is only half right.

a.  The trial court correctly entered judgment for the Even St. Parties on the constructive fraud claim.  Settled law requires proof of a fiduciary relationship to permit recovery on a constructive fraud theory.  (*Engalla v. Permanente Medical Group, Inc.* (1997) 15 Cal.4th 951, 981, fn. 13 ["'Constructive fraud allows conduct insufficient to constitute actual fraud to be treated as such where the parties stand in a fiduciary relationship'"]; *Mark Tanner Constr. v. Hub Internat. Ins. Servs.* (2014) 224 Cal.App.4th 574, 588 ["'Constructive fraud depends on the existence of a fiduciary relationship of some kind . . . .'"]; *Prakashpalan v. Engstrom, Lipscomb & Lack* (2014) 223 Cal.App.4th 1105, 1131 ["Constructive fraud ""'is a unique species of fraud applicable only to a fiduciary or confidential relationship"'""]; see also *Mary Pickford Co. v. Bayly Bros., Inc.* (1939) 12 Cal.2d 501, 525 [Civil Code section 1573 "has never been applied to fix liability for the breach of a statutory duty except that of a fiduciary"].)  There was no proof at trial that any of the Even St. Parties had a fiduciary relationship (or any relationship, really) with Roberts Majoken.

Pope counters that such proof was not required, chiefly relying on a 1961 Court of Appeal case (*County of Santa Cruz v. McLeod* (1961) 189 Cal.App.2d 222 (*McLeod*)).  That case, which concerns a statute of limitations issue, is inapposite.  (*Id.* at 225.)  *McLeod* explains a constructive fraud issue was sufficiently raised in the trial court pleadings and holds the county's suit to recover "Old Age Security . . . payments" wrongly made to McLeod was timely filed.  (*Id.* at 224, 235-236.)  Insofar as

7

*McLeod* can be read to opine proof of a fiduciary relationship is unnecessary to prove constructive fraud (but see *id*. at 234 ["'In its generic sense, constructive fraud comprises all acts, omissions and concealments involving a breach of legal or equitable duty, trust, or confidence, and resulting in damage to another'"]), the overwhelming weight of authority, which we follow, holds to the contrary.[2] Pope also argues there is evidence the requisite fiduciary relationship did exist because the Even St. Parties "through a fraudulent artifice, by posing as Roberts Majoken, . . . took possession of the BMI Royalties" and "thus became involuntary trustees for the benefit of Roberts Majoken, with all attendant fiduciary obligations." This, again, is impermissibly circular. One cannot prove constructive fraud by presupposing fraud so as to satisfy otherwise missing proof of the fiduciary relationship element.

      b. The analysis and result are different with respect to the money had and received claim that the trial court decided in the Even St. Parties' favor. "An action for money had and received lies wherever one person has received money which belongs to another, and which in equity and good conscience should be paid over to the latter." (*Weiss v. Marcus* (1975) 51 Cal.App.3d 590, 599; accord, *Gutierrez v. Girardi* (2011) 194 Cal.App.4th 925, 937 ["'A cause of action is stated for money had and received if the defendant is indebted to the plaintiff in a certain sum "for money had and received by the defendant for the use of the plaintiff"'"].)

---

[2] Furthermore, even on its own terms, the *McLeod* island of authority involves a circumstance absent here: violation of statutes governing welfare assistance.

There was ample evidence at trial that would support a conclusion the Even St. Parties did receive money (royalty payments from BMI) belonging to another and that should, in equity and good conscience, be returned to the rightful recipient. At the same time, substantial evidence does support the trial court's determination that Roberts Majoken—as distinguished from Roberts—was not the rightful recipient of at least some of the royalty payments: in 1992, Roberts Majoken was dissolved by the State of New York and Roberts transferred the royalty payment rights he in 1979 assigned to Roberts Majoken back to himself as an individual.

The problem for the Even St. Parties, however, is Pope's counterargument: the trial court erred by not permitting her—at the end of the bench trial on Roberts Majoken's cross-complaint and having foreshadowed the request before trial—to add Pope (as Roberts's successor) as a plaintiff asserting the same money had and received claim.  Such an amendment is authorized under Code of Civil Procedure section 473, subdivision (a) when in furtherance of justice, and whether to permit the amendment is committed to the trial court's discretion (*Branick v. Downey Savings & Loan Assn.* (2006) 39 Cal.4th 235, 242 (*Branick*)).

Well-settled precedent holds amendments, including amendments to add a party, should be permitted with "great liberality" even during trial.  (See, e.g., *Huff v. Wilkins* (2006) 138 Cal.App.4th 732, 746 ["Courts must apply a policy of great liberality in permitting amendments to the complaint at any stage of the proceedings, up to and including trial, when no prejudice is shown to the adverse party"]; *Berman v. Bromberg* (1997) 56 Cal.App.4th 936, 945 ["There is a policy of great liberality in permitting amendments to the pleadings at any

stage of the proceeding"].) Where the addition of a party will not result in a wholly distinct cause of action such that an opposing party would be prejudiced, it is an abuse of discretion not to permit the addition and avoid what would otherwise amount to a forfeiture on standing grounds. (*Branick*, *supra*, 39 Cal.4th at 243 ["Defendants argue plaintiffs should not be permitted to substitute a new plaintiff because their failure to name the new plaintiff in their original complaint was not a mistake. No such rule exists. To the contrary, courts have permitted plaintiffs who have been determined to lack standing, or who have lost standing after the complaint was filed, to substitute as plaintiffs the true real parties in interest"]; *Klopstock v. Superior Court* (1941) 17 Cal.2d 13, 21; see also *Atkinson v. Elk Corp.* (2003) 109 Cal.App.4th 739, 761 ["'[I]t is an abuse of discretion to deny leave to amend where the opposing party was not misled or prejudiced by the amendment'"]; *Honig v. Financial Corp. of America* (1992) 6 Cal.App.4th 960, 965 ["Motions to amend are appropriately granted as late as the first day of trial [citation] or even during trial [citation] if the defendant is alerted to the charges by the factual allegations, no matter how framed [citation] and the defendant will not be prejudiced"]; *Morgan v. Superior Court* (1959) 172 Cal.App.2d 527, 530 ["If the motion to amend is timely made and the granting of the motion will not prejudice the opposing party, it is error to refuse permission to amend and where the refusal also results in a party being deprived of the right to assert a meritorious cause of action or a meritorious defense, it is not only error but an abuse of discretion"].)

Applying these principles, it was an abuse of discretion not to permit the addition of Pope (as Roberts's successor) as a plaintiff to assert the money had and received cause of action.

10

Yes, the request to add her as a plaintiff was made far later than it should have been, and that is a significant point in favor of the trial court's ruling. But dispositive, in our view, is the evidence that suggests the money had and received cause of action may be meritorious (apart from the standing deficiency relied on by the trial court) and the absence of any meaningful prejudice to the Even St. Parties, who long had notice of the money had and received claim—the substance of which was not affected by the party asserting it (especially in light of the close identification in litigation of Pope, as Roberts's successor, and Roberts Majoken).

The Even St. Parties' only rejoinder is the assertion that granting the motion to add Pope as a plaintiff asserting the money had and received claim would have changed the presentation of evidence at trial because they would contest whether Roberts, as opposed to Stewart, was truly entitled to payment of the royalties in question. There are three responses to this. First, the type of prejudice that would support the trial court's refusal to permit amendment to add Pope as a plaintiff is not shown by an argument that the amendment would have required a trial on the merits—that is exactly the result that cases like *Branick* expect. Nothing in the record suggests the Even St. Parties are prejudiced in the correct sense, i.e., that they would for some reason be less able to mount their proffered who-is-the-real-owner defense on the merits than they would have been if Roberts Majoken had earlier moved to amend by adding Pope as a plaintiff. Second, Pope raised in her trial brief filed *before* trial the possibility that she would ask to amend to add her as a plaintiff; so forewarned, any prejudice to the Even St. Parties was at best de minimis. Third, and finally, we have accepted the Even St. Parties' argument on cross-appeal that

11

reversal of the declaratory relief cause of action is required.  So, from a practical perspective, there is going to be a trial on the rightful recipient of the royalty payments one way or the other. The Even St. Parties cannot be prejudiced by the prospect of trying an issue that will need to be tried regardless.

## DISPOSITION

The trial court's summary adjudication of the fourteenth cause of action for conversion in Pope's Fourth Amended Complaint is affirmed. The trial court's summary adjudication of the sixth cause of action for declaratory relief in the Even St. Parties' Second Amended Cross-Complaint is reversed and remanded for further proceedings not inconsistent with this opinion. The trial court's judgment for the Even St. Parties on Roberts Majoken's Amended Cross-Complaint is reversed and remanded with directions to grant Roberts Majoken's request to add Roberts's successor in interest as a party plaintiff and, thereafter, for retrial on the second cause of action for money had and received. All parties shall bear their own costs on appeal.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

BAKER, Acting P. J.

We concur:

MOOR, J.

KIM, J.

13